# Coxe *versus* Heisley.

19   243
202   ³249

1. Customs which trench on the principles of the common law ought to be taken strictly.

2. A party who relies on a local usage should prove distinctly that it has all the requisites of an established custom. It must be ancient, uniform, and notorious.

3. A *local* usage, if it be ancient, uniform, notorious, and reasonable, may enter into and form part of a contract which is to be executed at the place where the usage prevails; but it must not conflict with the settled rules of commercial law, nor defeat the essential terms of the contract between the parties, whether such contract be express *or implied.*

4. A common carrier, who received into his canal-boat certain household furniture to be carried from Lycoming county to Philadelphia, a portion of which became wet whilst in his charge, (no *express* contract existing limiting his responsibility), cannot show that a usage exists, in relation to carriers on the Pennsylvania Canal, that the dangers of navigation, fire, and unavoidable accidents, are excepted from the risks of common carriers.

5. If the owner of goods intrusted to a carrier be guilty of any fraud or imposition towards the carrier, as by concealing the value or nature of the articles, or deludes him by his own carelessness in treating the parcel as of little or no value, or of fraudulent misrepresentation in regard to the value of the property, he cannot hold the carrier liable for injury to the goods sustained in consequence thereof.

[Coxe *v.* Heisley.]

ERROR to the Common Pleas of *Lycoming county*.

This was an action on the case by John R. Coxe *v.* John Heisley, to recover damages for injury from water done to his household furniture, books, &c., while being taken by defendant in a canal-boat from Williamsport to Philadelphia, in the spring of 1849. The defendant was charged as a common carrier, for carrying the goods in a leaky boat, and for carelessness. Plea, not guilty.

The plaintiff produced a receipt by defendant for the goods. It contained no exception or limitation of responsibility. It was a mere receipt for the goods. Endorsed, was a receipt for the carriage.

On the part of the *defendant*, testimony was given by the captain of the boat, that the boat did not leak when starting; that it began to leak when it lay at Conestoga, and that he did not know the cause of it.

A witness was called, who, under exception on the part of the plaintiff, testified, that, as far as he always understood, the custom of the canal, from boatmen and others whom he has heard speak of it, dangers of the navigation, fire, and unavoidable accidents are excepted. Another witness testified that he had been engaged on the canal for fourteen years; was captain of a boat from seventeen to twenty-two. He said, "It is understood by all men engaged in business on the canal that boatmen are not liable for dangers of the navigation, fire, and unavoidable accidents."

On the part of the *plaintiff*, a witness testified that he previously had something to do with shipping freight on the canal; and that he was not aware of any custom limiting the liability of boatmen on the canal.

POLLOCK, J., charged the jury, *inter alia*, that by the common law, when a loss happened, it was incumbent on the carrier having the goods in charge, to establish that the loss was occasioned by some occurrence beyond his control. But that in Pennsylvania this liability may be limited by special contract; so it may be abridged by the usage or custom on particular waters: 8 *Ser. & R.* 533–565. The defendant in this case has alleged that his liability as a common carrier has been limited by the particular usage or custom relating to carriers on the Pennsylvania Canal. If the custom or usage has been established to the satisfaction of the jury, and you believe the leak (by which the damage in this case appears to have been occasioned) was occasioned by the dangers of the navigation, or resulted from unavoidable accidents, and not from the negligence and unskilfulness of the defendant, or those navigating the boat, or from the insufficiency of the boat, and that due diligence and proper skill were used, the defendant would not be liable, and your verdict should be for defendant.

In answer to a point submitted on the part of the defendant,

[Coxe v. Heisley.]

the Court answered, that, "If the owner be guilty of any fraud or imposition in respect to the carrier, as by concealing the value or nature of the articles, or deludes him by his own carelessness in treating the parcel as a thing of no value, or misrepresents a box to contain household goods when they contain medicines, he cannot hold the carrier liable for the loss of or damage to the goods, &c., in relation to which the fraud was practised or the misrepresentation made :" 3 *W. & Ser.* 25.

September 11, 1851, verdict for defendant.

Error was assigned to the charge, and to the answer to the point.

*C. W. Scates* for plaintiff in error.—Evidence of usage is not admissible against a general rule of law : 2 *Johns.* 335 ; 2 *Burr.* 1216 ; 3 *Watts* 178 ; 4 *Rawle* 195 ; 2 *W. C. C. Rep.* 24 ; 1 *Dallas* 255 ; 6 *Binn.* 417 ; 2 *Sumner* 567 ; 4 *Watts* 402 ; 7 *Mad.* 39 ; 1 *Hall.* 602, 619 ; 13 *Pick.* 141 ; 10 *Mass.* 28 ; 1 *Watts* 360.

The existence of a custom or particular usage is not *a mere opinion;* it is a fact which is to be proved. A particular custom should be plead specially. Evidence of it is not admissible under the general issue.

For the *defendant in error,* it was contended that it was not error to admit evidence of a custom to control the general rule : 8 *Ser. & R.* 533, 565 ; 5 *U. S. Con. Rep.* 696 ; *Brightly* 365.

The question of the extent of the liability of common carriers by water, is unsettled in this state : 8 *Ser. & R.* 533 ; 2 *Binn.* 72, 172.

It was not necessary to plead the custom specially : 1 *Ch. Pl.* 491 ; 2 *Barr* 23 ; 7 *Id.* 23 ; 2 *Harris* 59.

The opinion of the Court, filed September 28, was delivered by

BLACK, C. J.—The defendant, a common carrier, received certain goods of the plaintiff on a canal-boat at Williamsport, to be delivered at Philadelphia. They were damaged on the way, and this suit is brought to recover for the injury. The defence was, that by a custom on the canal, carriers are not bound to make good any loss which may happen to goods which they are intrusted with, if such loss results from the dangers of the navigation, from fire, or from unavoidable accident; and this injury to the goods in question, it is alleged, was produced by one of these causes.

The contract between the parties, if construed by the common law of the land, bound the defendant to deliver the goods in Philadelphia in as good order as he received them, unless he was prevented from doing so by the act of God, or by a public enemy.

[Coxe *v.* Heisley.]

He undertook to show that this contract was not to be performed according to its legal import, but according to a custom which prevailed among that class of carriers who are engaged in business on the Pennsylvania Canal.

It was held, a century since, that all customs which intrench on the common law, ought to be taken strictly, nay, very strictly (11 *Mad.* 160), and that where law and custom conflict, the former must stand and the latter go down (7 *Vin. Abr.* 187). The leaning of the Courts, both in England and America, has of late years become still stronger against allowing the law to be controlled by local usages (2 *Sumner* 567). The evidence of them often arises out of mere mistake, and they are so constantly liable to misapprehension and abuse, that they must always be received with dislike and jealousy. For these reasons it is necessary that a party who relies on such a custom, shall prove distinctly, not only that it exists, but that it has all the legal requisites of an established custom.

It must be *ancient*. In England it must have stood time out of mind. In this state it must have existed at least long enough to become generally known (3 *W. C. C. R.* 149; 3 *Watts* 179). Neither of the three witnesses sworn for the defendant testify whether the custom he relied on was a month, or a year, or ten years old, at the time of the trial. This is a fatal defect in the proof. Antiquity is not enough. To be valid, a custom ought to be proved to have been uniform from its commencement, without interruption or serious opposition, and to have had the acquiescence of those who are interested against it, as well as of that class who are benefited by it. It is not sufficient that transporters and boatmen have been in the habit of denying the legal liability of common carriers on the canal. Exemption from the public and general laws of the country cannot be made out in favor of any portion of the people by such means. Another most essential requisite is that it be *notorious*, so that all men whose interests or rights are brought within its operation may know of it. Such evidence was not given, and, in a case like this, could not be expected; for the persons who send their freight through the Pennsylvania Canal are living in every part of the continent. The impossibility of a special custom becoming generally known all over the world, will perhaps for ever prevent the establishment of one which common carriers, on a great thoroughfare like this, can take advantage of. This is not to be regretted. The law is as wise and as just as any custom which the transporters would be likely to make for themselves. At any rate, it would be a most intolerable wrong to allow strangers, who rely upon the law, and trust their whole fortunes on the canal, to be entrapped by a custom of which they are ignorant. But, assuming the usage in question to be well proved, as an ancient, notorious, and uniform

[Coxe *v.* Heisley.]

course of business, still it is no defence here, because a well set-
tled rule of commercial law will not yield to any local custom
whatever: (8 *Taunt.* 261; 2 *Barn. & Adol.* 746; 7 *Johns.* 389;
6 *Pick.* 131.)  The law which this defence would overthrow is not
only well settled, but the whole country is concerned in keeping
it settled.  Property amounting to many millions of dollars is all
the time in the hands of carriers, and there is no security for it
except in their strict accountability.  Even an express stipulation
in the bill of lading is to be treated with disfavor, if its object is
to diminish the carrier's legal liability.

The custom, in this case, is set up to defeat the contract of the
party, as well as the law.  The receipt of the goods implied a
promise to deliver them safely in Philadelphia; implied it as
clearly as such a promise could be expressed in words or writing.
Now a custom cannot be received to defeat the essential terms of
a contract (3 *Kent* 360).  The usage of trade is admissible in evi-
dence to explain a contract which is doubtful or ambiguous, or
where words are used in a sense different from their ordinary
meaning (7 *Johns. R.* 389), but not to change or destroy a con-
tract: (8 *Taunt.* 254; 11 *Adolph. & Ellis* 23; 2 *Sumner* 377;
2 *Greenl. Evidence*, § 292.)  The cases which rule this principle
are mostly upon express contract, but it cannot be doubted that
where a well understood and clearly defined rule of law implies
a contract from the act of the party, from the consideration paid
to him, and from the known duties of his calling, such a contract
is, and ought to be, no less secure against a local usage incon-
sistent with it, than the same contract would be if made in express
words.

Our own decisions on this subject have not been very consistent.
This Court, in the early cases, stood over the law and guarded it
against invasion faithfully enough.  A rule among merchants to
charge interest for goods sold after six months (1 *Dallas* 265), a
usage of plasterers to charge for their work at a certain rate (3
*Yeates* 318), a custom to re-enter for a forfeiture, incurred by
non-payment of rent (6 *Binn.* 417).  All these were held to be
inadmissible.  But in 1822 a custom on the Ohio river was per-
mitted to vary the responsibility of a carrier there (8 *Ser. & R.*
533), and nine years later a usage in Philadelphia was allowed to
add a warranty to a contract of sale, which in fact and in law did
not embrace one (3 *Rawle* 101).  In both these cases Chief Jus-
tice GIBSON dissented from a bare majority; and his warning,
though unheeded at the time, was remembered when the question
came up again; (3 *Watts* 179; 5 *Barr* 42.)  Our latest decisions
are consistent with the oldest.  The law of Pennsylvania may
therefore be considered as settled in accordance with reason, and
with the judicial authorities of other commercial states.  A local
usage, if it be ancient, uniform, notorious, and reasonable, may

[Coxe *v.* Heisley.]

enter into, and become part of, a contract which is to be executed at the place where the usage prevails; but here, as elsewhere, it is checked by this wholesome limitation, that it must not conflict with the settled rules of law, nor go to defeat the essential terms of the contract. We are all of the opinion that the evidence of the usage ought not to have been received, or being received, the Court should have instructed the jury to disregard it. On the question of fraud, the Court laid down the law correctly, and the jury having the law from the Court, and the facts from the witnesses, we will not presume that they have misapplied the one to the other.

Judgment reversed and *venire de novo* awarded.