# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

Jacob Myers, Appellant, v. The Southwestern National Bank.

193 f221    1 596

*Banks and banking—Verifying bank book—Principal and agent.*

Where a depositor of a bank intrusts to a confidential clerk the care of his bank account and the duty of verifying the settlements of his bank book, and the clerk forges checks, and when the depositor's checks are returned by the bank abstracts the forged checks and reports to his employer that the settlement is correct, and there is no evidence that the bank was negligent in paying the forged checks, and it appears that if the depositor had verified the settlement himself he would have discovered the fraud, the depositor, while not chargeable with the knowledge of his clerk that the latter had committed the forgery, is clearly responsible for the acts and omissions of his clerk in the course of the duties with which he was intrusted, viz: to receive the checks, and he cannot recover from the bank the loss which he sustained.

Argued Jan. 19, 1899. Appeal, No. 294, Jan. T., 1898, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1896, No. 470, on verdict for defendant. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Assumpsit to recover an amount alleged to be due on a bank deposit. Before BIDDLE, P. J.

Plaintiff's statement was as follows:

VOL. CXCIII—1    (1)

Jacob Myers, the plaintiff in the above case, claims to recover from the Southwestern National Bank, the defendant therein, the sum of $13,090, with interest thereon from May 22, 1894, which sum plaintiff avers is justly due and owing by the defendant to him by reason of the following : Defendant was and is engaged in the banking business, and plaintiff was a depositor with it.  When the plaintiff's account with defendant was opened it was then and there agreed by defendant that if plaintiff would deposit with it in consideration of its being allowed to use the moneys so deposited it would honor all checks and drafts drawn by him upon said account, and would safely keep the moneys so deposited by him, so that the same should be paid only to him or on his order.  In accordance with the custom of banks, plaintiff thereupon signed his name in a signature book kept by defendant, that it might know his signature when checks or drafts drawn or purporting to be drawn by him upon said account were presented to the bank for payment.  In accordance with the said agreement, plaintiff, on the dates set out in the following account, deposited with defendant the sums set out as cash in said account, and at the times in said account set forth defendant discounted for plaintiff the notes referred to therein, all of which were discounted so as to permit plaintiff to draw there against, and have long since been paid in cash to defendant.  The following is a copy of said account as taken from plaintiff's deposit book with said defendant.

\*    \*    \*    \*    \*    \*    \*    \*

Said account aggregates the sum of $622,040.63, all of which was received by defendant for plaintiff's account under and in accordance with their agreement.  During this period defendant paid to plaintiff, or upon his account, checks and notes drawn by him upon and payable out of said deposits and discounts, for various sums, aggregating $602,032.43.  Defendant also wrongfully charged to plaintiff's account, sometime between March 26, 1891, and May 29, 1891, the exact dates of which are not known to plaintiff, two forged checks or notes, purporting to have been drawn by plaintiff for $300 and $200 respectively.  Defendant also wrongfully charged to plaintiff's account sometime between May 29, 1891, and August 4, 1891, the exact dates of which are not known to the plaintiff, three forged checks or notes purporting to have been drawn by plaintiff for

$400, $400 and $100 respectively. Defendant also wrongfully charged to plaintiff's account sometime between August 4, 1891, and September 29, 1891, the exact dates of which are not known to plaintiff, three forged checks or notes purporting to have been drawn by plaintiff, each for the sum of $500. Defendant also wrongfully charged to plaintiff's account sometime between September 29, 1891, and December 24, 1891, the exact dates of which are not known to plaintiff, two forged checks or notes purporting to have been drawn by plaintiff, for $500 and $1,275 respectively. Of this latter sum plaintiff believes $975 thereof was expended on plaintiff's account, but without any knowledge whatever on his part of the manner in which it was obtained. Defendant also wrongfully charged to plaintiff's account, sometime between December 24, 1891, and May 12, 1892, the exact dates of which are not known to plaintiff, three forged checks or notes purporting to have been drawn by plaintiff for $200, $435 and $400 respectively. Of these sums plaintiff believes that $435 thereof was expended on plaintiff's account, but without any knowledge whatever on his part of the manner in which it was obtained. Defendant also wrongfully charged to plaintiff's account sometime between May 12, 1892, and September 8, 1892, the exact dates of which are not known to plaintiff, three forged checks or notes purporting to have been drawn by plaintiff for $500, $1,250 and $550 respectively. Of these sums plaintiff believes that $600 thereof was expended on plaintiff's account, but without any knowledge whatever on his part of the manner in which it was obtained. Defendant also wrongfully charged to plaintiff's account sometime between September 8, 1892, and January 3, 1893, the exact dates of which are not known to plaintiff, three forged checks or notes purporting to have been drawn by plaintiff, for $500, $1,400 and $500 respectively. Of these sums plaintiff believes that $900 thereof was expended on plaintiff's account, but without any knowledge whatever on his part of the manner in which it was obtained. Defendant also wrongfully charged to plaintiff's account sometime between January 13, 1893, and February 28, 1893, the exact dates of which are not known to plaintiff, two forged checks or notes purporting to have been drawn by plaintiff for $540 and $1,500 respectively. Defendant also wrongfully charged to plaintiff's account sometime between February 28,

1893, and July 14, 1893, the exact dates of which are not known to plaintiff, two forged checks or notes purporting to have been drawn by plaintiff, for $500 and $1,500 respectively. Defendant also wrongfully charged to plaintiff's account sometime between July 14, 1893, and October 2, 1893, the exact date of which is not known to plaintiff, a forged check or note, purporting to have been drawn by plaintiff, for $500. Defendant also wrongfully charged to plaintiff's account sometime between October 2, 1893, and November 24, 1893, the exact date of which is not known to plaintiff, a forged check or note, purporting to have been drawn by plaintiff, for $500. Defendant also wrongfully charged to plaintiff's account sometime between November 24, 1893, and December 31, 1893, the exact date of which is not known to plaintiff, a forged check or note, purporting to have been drawn by plaintiff, for $350.

Plaintiff avers that all of said forged checks and notes were drawn by one J. Edward Simpson, who was a bookkeeper of plaintiff, and was neither a skilled penman, nor was he skilled in nor had he had any experience in the forging of either plaintiff's signature or the signature of any one else, nor had he prior to the committing of said forgeries attempted to imitate even plaintiff's signature. Defendant paid said forgeries without that careful examination it otherwise would have and should have given to said checks and notes, because they were presented to defendant for payment by said Simpson, who was known to the officials of defendant and in whom they had confidence.

Plaintiff avers that he has never seen said forged checks or notes so charged against his account as aforesaid. When his bank book was settled on said dates of May 29, 1891, August 4, 1891, September 29, 1891, December 24, 1891, May 12, 1892, September 8, 1892, January 3, 1893, February 28, 1893, July 14, 1893, October 2, 1893, November 24, 1893, and December 31, 1893, said Simpson, without any authority from plaintiff, called upon defendant and obtained the canceled checks and notes, abstracted and destroyed said forged checks and notes and returned to plaintiff only the genuine ones, and then, in order to conceal from plaintiff his wrongdoing, made forged entries and forced balances in plaintiff's books so that the balance appearing upon plaintiff's deposit book exactly corresponded with the apparent balance due by defendant to plaintiff upon plaintiff's

other books and accounts. Plaintiff in each instance upon the settlement of his account carefully examined the signature on the checks and notes actually received by him and found them all genuine, and carefully compared the amounts on the stub of his check book and note book with the amounts on the checks and notes actually received by him and found them correct, and compared the apparent balances and found them correct. On the credit side of the deposit book, when it was returned from settlement, was not stated the dates of the checks or notes paid, or anything by which the identity of any particular item could be ascertained, except by a comparison and analysis of the amounts stated in the account with the checks and notes and check book and note book, and sometimes they could not be identified even in that way, owing to the fact that the employees of defendant at times added the amounts of two or three items of credit together, and entered them as if one item. Said credit side showed, and showed only, a large number of amounts, without sequence of alleged dates of payment, or otherwise than crowded on the page as if for defendant's convenience in comparison with its own accounts.      •

As soon as plaintiff suspected that there was possibly some error in his bank account and books generally, he employed a skilled accountant, who spent several months in examining his books and papers, including said bank account and books, without discovering any error in said bank account or any books affecting the same. A second accountant, after several weeks' examination, and after having had the benefit of the prior accountant's work, discovered the system employed by said Simpson on the books and the wrongful charges in defendant's books and accounts against plaintiff, and by examination of the plaintiff's account in the books kept at and by the bank itself learned of the wrongful charges above set forth; thereupon plaintiff at once notified defendant thereof and made claim for the $13,090, so as aforesaid wrongfully charged against his account, and for which he received no benefit. Plaintiff also at once caused the arrest of said Simpson, and he was duly tried, convicted and sentenced for the forgeries so as aforesaid committed by him.

On May 22, 1894, defendant declined to recognize plaintiff's claim, or to pay anything on account thereof or to recognize or to pay any checks drawn on account thereof, and expressly

agreed to waive the formality of presenting a check drawn there-against.

Defendant pleaded non assumpsit, payment with leave, etc., and set-off.

The facts appear by the opinion of the Supreme Court.

The court gave binding instruction in favor of defendant. Verdict and judgment for defendant. Plaintiff appealed.

*Error assigned* was in giving binding instruction for defendant.

*Alex. Simpson, Jr.,* with him *Francis Shunk Brown,* for appellant.—This judgment should be reversed, because it took away from the jury's consideration the question as to whether or not the bank's officers exercised due care in the inspection of the checks before paying them : Leather Mfgs.' Bank v. Morgan, 117 U. S. 96 ; Robb v. Penna. Co. for Ins. on Lives and Granting Annuities, 186 Pa. 456.

Even if appellant had introduced the employee at the bank as a proper person to receive money upon his (appellant's) check, unless he also authorized the bank to pay on checks drawn by the employee, the bank would be held liable as in other cases : Mackintosh v. Eliot Nat. Bank, 123 Mass. 393 ; Morse on Banks and Banking (3d ed.), sec. 470 ; Levy v. Bank of U. S., 1 Binn. 27 ; Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46.

At one stage in this case it was alleged that appellant was debarred because his bookkeeper abstracted and destroyed the forged checks, and because, as it was his duty to examine the account as returned, he knew of its inaccuracy, and appellant was affected with that knowledge. Outside of this state there is authority for that position, but it seems now to be set at rest adversely by Gunster v. Scranton Heat & Power Co., 181 Pa. 327, United Security, etc., Co. v. Cent. Nat. Bank of Phila., 185 Pa. 586, American Surety Co. v. Pauly, 170 U. S. 133, and Henry v. Allen, 151 N. Y. 1.

The settlement of the account does not estop the plaintiff : Mechanics' Bank v. Earp, 4 Rawle, 384 ; Bank of Penna. v. Haldeman, 1 P. & W. 161 ; West Philadelphia Bank v. Green, 3 Pennypacker, 456 ; Williams v. Dorrier, 135 Pa. 445 ; Emmons v. Stahlnecker, 11 Pa. 366 ; Shillingford v. Good, 95 Pa. 25.

Garrard v. Haddan, 67 Pa. 82, and Brown v. Reed, 79 Pa. 370, decided that the good faith of the holder of a check, or the bank that pays it, is of no moment, even in the case of the alteration of the body of the check or note, unless it is so negligently drawn as to allow of an addition without any erasure, crowding, or other perceptible change : Shisler v. Vandike, 92 Pa. 447 ; Lyon v. Phillips, 106 Pa. 66 ; Howard v. Turner, 155 Pa. 357 ; Zoebisch v. Rauch, 133 Pa. 532 ; R. R. Co. v. Gazzam, 32 Pa. 340 ; Essick v. Buckwalter, 1 Mona. 209 ; Com. v. Moltz, 10 Pa. 527 ; Zell's App., 103 Pa. 344 ; Wright's App., 99 Pa. 425.

Outside of this state the cases are not altogether uniform, but the principal divergence grows out of the question as to whether or not the depositor is chargeable with the forger's knowledge, where the forger is directed to examine the account and vouchers after the bank book is settled. Happily, as shown above, that question is resolved in this state in favor of appellant.

The outside cases should be considered in three classes :

1. Where the forgeries are of indorsements : Welsh v. German-American Bank, 73 N. Y. 424; Bank of British North America v. Merchants' National Bank of the City of New York, 91 N. Y. 106 ; Shipman v. Bank of the State of New York, 126 N. Y. 318 ; Atlanta Nat. Bank v. Burke, 81 Ga. 597 ; Wind v. Fifth National Bank, 39 Mo. App. 72 ; Vagliano Bros. v. Bank of England, L. R. 22 Q. B. Div. 103 ; Vagliano v. Bank of England L. R. 23 Q. B. Div. 243 ; Dodge v. National Exchange Bank, 20 Ohio, 234 ; Brixen v. Deseret National Bank, 5 Utah, 405.

2. Where the checks contain a genuine signature but have been altered in amount or in the name of the payee. This class including Leather Manufacturers' National Bank v. Morgan, 117 U. S. 96, and Dana v. National Bank of the Republic, 132 Mass. 156 ; and as is pointed out in Shipman v. Bank of New York, 126 N. Y. 318, presents a very different question from either the forging of the signature or of the indorsement, because, while the bank is bound to know the signature and the indorsement, it is not bound to know the writing in the body of the check : Morse on Banks and Banking (3d ed.), sec. 480. Yet even in these cases, where it is held that the depositor is

bound by his agent's knowledge, though the latter was the forger, it is said that the case is for the jury.

3. The last and most numerous class is where the forgery is of the signature of the depositor, which generally is effected by the confidential clerk, whose duty it also is to verify the returned account: Weisser v. Denison, 10 N. Y. 68; Frank v. Chemical National Bank of New York, 84 N. Y. 209; Manufacturers' National Bank v. Barnes, 65 Ill. 69; Hardy & Bros. v. Chesapeake Bank, 51 Md. 562; Janin v. London, etc., Bank, 92 Cal. 14; First National Bank v. Allen, 100 Ala. 476.

In these cases also it is held:

(*a*) The failure to object raises a rebuttable presumption of correctness.

(*b*) The prejudice to the bank must be affirmatively shown, or a verdict must go against the bank.

(*c*) If such prejudice be shown it is still for the jury to decide whether or not the depositor neglected his duty to the bank.

The following may be laid down as the true rules on the subject:

1. The depositor is under no duty to examine the indorsement on his returned checks.

2. By himself or agent he should examine the returned checks so as to discover and report alterations therein.

3. As the bank is obliged to know his signature he is under no duty to search for forgeries thereof.

4. He is not affected by the knowledge of his fraudulent agent, or estopped from recovery by that agent's false report as to the result of his examination.

5. Even if no examination is made he may still recover, unless the bank affirmatively proves a loss by reason thereof.

6. An examination of the checks actually received by him, and a comparison with the account showing them as actually issued, and a comparison of the apparent balances, is all the depositor need do, even though he makes the examination himself.

7. In no case is an instructed verdict for defendant justified if there is evidence that forgeries are included in the account.

*John G. Johnson*, with him *Frank P. Prichard*, for appellee.

—After a bank has paid checks purporting to be issued by its depositor, it is its duty, under long established banking custom, to deliver those checks to the depositor as vouchers in its account in order that the credits therefor entered upon its books may be allowed by the depositor. Upon such presentation to the depositor, his duty is precisely the same as the duty of a drawee of a draft, or a person to whom his own commercial paper is presented for payment or acceptance, namely, to examine, and accept or reject the signatures and return the rejected checks within a reasonable time. A failure on the part of the depositor to do this prevents him from disputing the bank's credits on account of the checks: Leather Mfrs.' Bank v. Morgan, 117 U. S. 96; United Security, etc., Co. v. Cent. Nat. Bank of Phila., 185 Pa. 586.

It being the duty of the depositor to promptly examine and accept or reject within a reasonable time his commercial paper thus presented to him to be honored, he cannot delegate that duty to an agent without becoming responsible for acts of omission or commission of such agent in the performance of such duty: Bank v. Allen, 100 Alabama, 476; Gunster v. Scranton Illuminating Heat & Power Co., 181 Pa. 327.

Where the depositor has failed within a reasonable time to examine and reject the signatures to his commercial paper thus presented, and return the rejected paper, he cannot recover from the bank the payment made by it, and the courts will not go into speculative question as to what might or might not have been the pecuniary results from an earlier discovery of the fraud: Leather Mfrs.' Bank v. Morgan, 117 U. S. 96.

Where the facts are undisputed, and it clearly appears from the evidence that the depositor has not within a reasonable time examined and rejected the signatures to his commercial paper, and therefore cannot refuse to allow the credits for the same, it is the duty of the court to instruct the jury, there being no question of fact to be left to them : Iron City Nat. Bank v. Fort Pitt Nat. Bank, 159 Pa. 46.

OPINION BY MR. CHIEF JUSTICE STERRETT, Oct. 6, 1899:

The only testimony introduced on the trial of this case was that of the plaintiff himself and his witnesses; none was offered by the defendant bank. When plaintiff closed his case

the learned trial judge instructed the jury "to find a verdict for the defendant," which was accordingly done, and judgment was afterwards entered on the verdict. The binding instruction under which the jury acted constitutes the only specification of error.

The averments of fact on which the plaintiff's claim was based are fully set forth in his statement and need not be recited here at length.

This suit was brought to recover $13,090, deposited by him in the defendant bank, and paid out by it, as he alleged, on unskilfully executed forgeries of checks, made by his confidential clerk and bookkeeper, without a careful examination by the proper bank officers of the signatures thereto, because of their acquaintance with and confidence in the forger. He further substantially alleged that said forged checks were abstracted and destroyed by said clerk, who also falsified his (plaintiff's) books and accounts so as to make the apparent balances in the check book and deposit book correspond, and that said falsification was so skilfully done as to deceive not only the plaintiff but also expert accountants employed by him to examine his books, checks and accounts. He further averred that as soon as the fraud was discovered the forger was arrested, convicted and sentenced, and the defendant bank was forthwith notified of the loss, but it declined to pay any part thereof.

It was shown on the trial that in March, 1891, the defendant bank opened an account with the plaintiff as a depositor in the usual form, and from that time, for the period of over two years and a half, his deposits, made in the ordinary way, aggregated over $622,000. During all that time, as well as before, plaintiff had in his employ said confidential clerk and bookkeeper, to whom he specially intrusted the business of attending to his bank accounts. That duty included making deposits, occasionally handing in the bank book to be written up and balanced, and, when that was done, the further duty of receiving the canceled checks, etc., with the payment of which the bank had credited itself, and delivering the same to the plaintiff for examination, approval, etc. In the same connection, it was the duty of the clerk to verify the bank book, as the same was written up and balanced from time to time by the bank, and report the result

to the plaintiff. This he professed to do, but, in fact, he falsely reported that the balance, etc., were correct.

From March, 1891, to November, 1893, the clerk forged checks to the amount of the claim in this case, which were paid by the bank and charged to plaintiff in his bank book. For the pur-- pose of concealing these forgeries, he falsified his employer's books, and, by misadditions and missubtractions, forced the balances in the check book so as to make them agree with those in the bank book. During the period above mentioned, plain- tiff's bank book was balanced twelve times. The first settle- ment included two forged checks, one $300 and the other $200. The last settlement included a $350 forged check. The other forgeries were respectively included in the intermediate settle- ments. At each settlement the amount of each check, not pre- viously settled and canceled, was entered on plaintiff's bank book by the bank as a charge against him, and the book, to- gether with the checks, was delivered to his clerk for the pur- pose of examination and verification. If, at the time of each settlement, the forged checks had been examined by the plain- tiff, or, if the number and the aggregate amount of the checks had been compared with the number and amounts of the checks separately entered in the bank book, or, if the checks had been compared with the stubs of the check book, or, if the additions of the deposits and checks on the check book had been examined, the forgery would have been discovered. Neither of these was done, for the reason that plaintiff's unfaithful clerk, who was deputed by him to receive the checks, etc., from the bank, take them to the office and compare the amounts, etc., with the bank book, abstracted and destroyed the forged checks, and failed to call his employer's attention to the discrepancies which undoubt- edly would have resulted from a proper comparison and exam- ination. He did this because he himself was the forger. The result was that, for more than two years and a half after the first forged checks were paid, no complaint was made and no notice of any error in the settlements was given to the bank. It was not the bank's fault that the first forgeries were not promptly discovered and notice thereof given. If plaintiff's duty to the bank had been performed at the proper time the fact would have appeared that the bank had charged plain- tiff, on his bank book, with the payment of two items ($300

and $200) for which no vouchers appeared among the checks handed to him by his clerk. These vouchers, the two forged checks, had been abstracted and destroyed by the latter. No objection having been made at the time of the first settlement, the bank had a right to assume that everything was correct, including the two checks purporting to be signed by him. His silence was tantamount to a declaration to that effect, and, in afterwards honoring checks signed by the same person, the bank had a right to consider the fact that these signatures had been at least tacitly recognized by the plaintiff as genuine.

While the plaintiff was not chargeable with the knowledge of his clerk that the latter had committed the forgery, he was clearly responsible for the acts and omissions of his clerk in the course of the duties with which he was intrusted, viz: to receive the checks from the bank, take them to his employer's office, compare the amounts thereof with the amounts in the bank book and check book, etc.

In view of the uncontradicted evidence as to the foregoing facts, it cannot be doubted that as between the bank and the plaintiff the latter alone should be, held responsible for the consequences resulting from the failure to examine the checks in question and approve or reject them within a reasonable time. In contemplation of law, the delivery of the checks to plaintiff's clerk was a delivery by the bank to the plaintiff himself, as the basis on which its credits were claimed. The bank was therefore entitled to have them examined and, if rejected, returned within a reasonable time. That was not done, and because of plaintiff's failure to perform his duty in that regard, he should not be permitted to recover. Any other rule would be inconsistent, not only with general and long established custom, but also with well settled principles of law on the subject: Leather Manufacturers' Bank v. Morgan, 117 U. S. 96, 107; United Security, etc., Co. v. Bank, 185 Pa. 586.

We find no evidence that required submission of the case to the jury. There was no conflict of testimony as to the failure of the plaintiff to perform the duty which, under the undisputed evidence, he owed to the defendant; nor was there any evidence of negligence on the part of the bank that should have been submitted to the jury. The checks purporting to be signed by the plaintiff were destroyed, and of course they were not

produced.   There was not a particle of evidence that the signatures were not such complete facsimiles of plaintiff's signature as to be impossible of detection, even by an expert.   As correctly stated by counsel for the bank, the clerk did say in reply to questions put by plaintiff's counsel, that he was not an expert penman, and that he had never before had any experience in forging other people's names, but he was not asked, and did not say, that the signatures were not made—either by the use of tracing paper or otherwise—so like the originals that they could not be detected by an ordinary inspection.   On this point, negligence is not to be presumed, and hence the presumption must be in favor of the bank.   In the absence of any evidence, from the signatures themselves or from witnesses, that there was any difference between them and plaintiff's signature, which could be detected by the eye, it must be assumed that the forgery was of such a character that the bank acting with due care and caution was deceived by it.   In fact there was no evidence from which the jury would have been warranted in drawing the conclusion that the bank in honoring the checks acted negligently.

After a careful consideration of the evidence, our conclusion is that there was no question of fact that should have been submitted to the jury, and hence there was no error in directing them to find for the defendant.

The judgment is therefore affirmed.