## Harris *v.* Sharples, Appellant.

*Contract—Performance—Province of court and jury.*

In an action on a contract for furnishing catalogue covers ornamented with lithographic work, it appeared that after the proof had been submitted defendant wrote to plaintiffs, "The print as now made will be satisfactory if the covers furnished will be equal to these in good effect." Plaintiffs acknowledged this letter, quoting in effect its terms and stating that they would proceed to print. When the covers were delivered, the defendant found that the plaintiffs had added their imprint. The evidence showed that the defendant had been exceedingly careful in selecting a design for the covers, and was insistent that they should be absolutely satisfactory to him in every particular, and that this was known to plaintiffs. It also appeared that the plaintiffs had intentionally left the imprint off of the proof. Plaintiffs claimed that it was the custom of lithographers to submit proofs without the imprint and to put it on the finished work unless otherwise ordered. The trial judge left it to the jury to determine whether the difference between the proof and the finished work rendered the covers of appreciably less artistic attractiveness and usefulness for the purposes to which the defendant contemplated applying them. *Held* (1) that the action of the trial judge was error ; (2) that it was immaterial what the custom of the trade was, since it could not defeat the essential terms of the contract ; (3) that the defendant was entitled to binding instructions in his favor.

Argued March 5, 1902.    Appeal, No. 83, Jan. T., 1901, by defendant, from judgment of Superior Court, Oct. T., 1900, No. 91, affirming judgment of C. P. Chester Co., Oct. T., 1899, No. 35, in case of George S. Harris & Sons v. Philip M. Sharples. Before McCOLLUM, C. J., DEAN, FELL, MESTREZAT and POTTER, JJ.    Reversed.

Appeal from Superior Court.    See 15 Pa. Superior Ct. 643.

*Error assigned* was judgment of Superior Court.

*John G. Johnson* and *William M. Hayes*, with them *J. Carroll Hayes*, for appellant.—The learned trial judge erred in charging the jury that though the covers were not in accordance with the proof because they contained an imprint of the appellees, yet that the appellant was obliged to accept them if the jury found the difference did not render the covers of appreciably less artistic virtue, attractiveness and usefulness : Wil-

kinson v. Becker, 155 Pa. 194; Levyeau v. Clements, 175 Mass. 379; 56 N. E. Repr. 735.

The learned trial judge erred in not charging the jury that their verdict should be for the appellant: Gillespie Tool Co. v. Wilson, 123 Pa. 19; Martin v. Schoenberger, 8 W. & S. 367.

*Alfred P. Reid,* for appellee.

OPINION BY MR. JUSTICE MESTREZAT, April 21, 1902:

This is an action on a contract to recover for lithographing and printing catalogue covers which were to be used for advertising purposes in the defendant's business of manufacturing cream separators. It is averred in the statement that the defendant gave to the plaintiffs an order to do the work " upon the undertanding that the plaintiffs would submit to said defendant a satisfactory sketch of the front and back covers, and that after said sketch was approved would submit a satisfactory proof of the same." It is further averred that the sketch and proof were furnished the defendant and approved by him and that the plaintiffs lithographed and printed the covers " in accordance with said proof and said order." The contract was evidenced by certain letters which passed between the parties in reference to the subject. On April 12, 1898, the plaintiffs wrote the defendant that they had entered his order for the catalogue covers at a price therein named " in accordance with the following understanding: (1) That we are to submit you satisfactory sketch of front and back covers in accordance with conversation you had with the writer yesterday, and (2) that after sketch has received your approval, we are to submit you a satisfactory proof from same." On April 16, 1898, the defendant acknowledged the receipt of the plaintiffs' letter in which he stated that the understanding was all right except the price. Two days later, the plaintiffs wrote the defendant that the sketch would be finished shortly and presented to him. Mr. Sharples wrote the plaintiffs on August 5, 1898, acknowledging the receipt of certain prints or sketches and criticising them. He added : " Regarding the criticism of the prints which I have made above, I hope you will not think that I am too hard to please. If you will, however, take the matter up with your Philadelphia man, he will tell you that I fully informed him

that I must have the privilege of being very critical in the matter as I should feel free to insist on this being absolutely satisfactory in every particular, and especially called his attention to the fact that I did not want to be bound in the acceptance of the prints to any approval I might give the sketches. I suggested to him that this might be an unreasonable position for me to take, but he assured me on account of the increased price I was paying for these, I should have the full privilege of final approval, so I feel free to insist on that more than I otherwise would." In a letter dated August 13, 1898, Harris & Sons enclosed two new proofs of a catalogue cover, conforming to the suggestions in the defendant's letter of August 5, and say: "We trust that the cover as now made will be entirely satisfactory to you, and that you will order us to proceed with the printing." To this, under date of August 22, 1898, the defendant replied that, "I think the print as now made will be satisfactory if the covers furnished will be equal to these in good effect." On the following day the plaintiffs wrote the defendant as follows: "We beg to acknowledge receipt of your favor of the 22d inst. advising us that the proof of cover as already submitted will be entirely satisfactory, providing the finished work will be equal to same. We will, therefore, proceed with the printing of the order: i. e. 200 M covers, and feel sure that the finished result will be entirely satisfactory to you."

The defendant denied the right of the plaintiffs to recover for several reasons, among others being that the printed covers " did not correspond with the proofs in the fact that a space thereon which should have been blank was filled with the imprint of the appellees, put there for advertising purposes," and which did not appear upon the proofs. On the trial of the cause George W. Eyre, the representative of the plaintiffs, who called him as a witness, testified to the number of covers printed and that they were superior to the proofs. On cross-examination, he said: "Q. They (the printed covers) are different from these (the proofs)? A. They are. Q. They are not the same? A. In one respect. Q. Tell the jury what that respect is. A. That respect is we have placed on the bottom of the rear page of the back cover— on the back cover we have placed our name, 'Geo. S. Harris & Sons, N. Y.,' our imprint, we call it, in very small letters. Q. That was not on the sample you sent to us? A. No,

sir; that was not on the sample we sent to you. Q. We never authorized you to put it on? A. No, sir; you never authorized us to put it on; that is true. . . . Q. You could have put your imprint on this before showing it to Mr. Sharples? A. We could, if we wanted to, but we did not want to. Q. You got him to approve something, and after he approved it, then you added to it by putting your advertisement on it, and did not let him approve that until they were printed and sent to him; is that right? A. That is right, practically right."

In reply to the contention that the printed covers by reason of the imprint did not correspond with the proofs submitted to and approved by the defendant, the plaintiffs claim that the imprint did not detract from the merit and usefulness of the covers and that its appearance upon the covers did not make them materially different from the proofs. It was further contended by plaintiffs that unless specifically agreed to the contrary, it was customary to impose the imprint upon the completed work as a matter of course. Upon this phase of the case, the learned trial judge instructed the jury to determine whether " the presence of the imprint to any material extent diminished the effectiveness of the covers, their virtue and value as a high order of artistic work, their usefulness for the purposes for which the defendant intended to apply them as an artistic catalogue cover of a high order." He also charged: " The imprint did not appear on the proofs. The finished work, therefore, does in this respect differ from the proofs, and if this difference renders the covers of appreciably less artistic virtue and attractiveness and usefulness for the purposes to which the defendant contemplated applying them, then the plaintiffs cannot recover." The jury returned a verdict for the plaintiffs and the judgment entered thereon was affirmed by the Superior Court.

This action is based upon an agreement, the terms of which are in writing and are definite and certain. The plaintiffs cannot recover unless they show, as they aver in their statement, that they have complied with their covenants in the contract. Have they done so? We concede to them the correctness of their contention, that, by the terms of their contract, the right of final approval claimed by the defendant applied to the proofs submitted and not to the finished work. That, however, is not the issue raised by the presence of the imprint on the printed

copies of the cover. The covers were to " be equal in good effect " to the proofs which was interpreted by the plaintiffs in their letter of August 23, 1898, to the defendant as meaning that the finished work would be equal to the proofs, with the assertion that the plaintiffs felt sure " that the finished result would be perfectly satisfactory to you." This language was properly construed by the learned trial judge to mean that the " plaintiffs undertook to furnish the defendant with catalogue covers like the proofs submitted, and equal to them in artistic effect and excellence."

It is conceded by the trial court, the Superior Court and the plaintiffs that the covers were not like the proof submitted and approved by the defendant, that the finished work differed from the proofs, and that it was changed by the addition of the imprint on the rear page of the back cover. In addition to this admitted violation of the contract, the testimony of a representative of the plaintiffs is that the defendant did not authorize them to place their imprint on the cover; that it could have been put on the proof before it was submitted to the defendant for his approval but the plaintiffs did not desire to do so, and that after securing his approval of a proof they added their own advertisement to it, without affording the defendant an opportunity to see it until the printed covers were sent him. Notwithstanding these facts, unquestioned and uncontradicted, the learned trial judge submitted the case to the jury with the instruction that " if you find against him (defendant) on both of them (his objections), that is, that the effectiveness and usefulness as an artistic catalogue cover is not appreciably diminished by the presence of the imprint, and that in other respects the ornamentation is substantially equal in virtue and attractiveness to the proofs, your verdict will be for the plaintiffs." This eliminated from the case the real issue, to wit : whether the plaintiffs had complied with the contract to furnish printed covers in accordance with the proofs, and substituted other issues, the determination of which could have no bearing on the plaintiffs' right of recovery in this action. The right to put the imprint, the plaintiffs' advertisement on the covers, did not depend on its artistic effect on the finished work. It was wholly immaterial whether or not it rendered the work more or less artistic and attractive. That would, as appears by the variety

of opinions expressed by the witnesses on the trial, depend upon the taste of the individual to whom the question might be submitted. Nor was the court called upon to apply the doctrine of substantial compliance with the contract. The plaintiffs could not invoke it here as the departure from the proofs was wilful and intentional.

The lithographed catalogue covers were to be used by the defendant to advertise " The Sharples Cream Separator." As disclosed by his letters, he was exceedingly careful in selecting a design for the covers and was insistent that they should be absolutely satisfactory to him in every particular. The plaintiffs were advised of these facts before the proofs were submitted for the defendant's approval. He wished to obtain work of the highest artistic excellence and hence he was critical in selecting the details of the design. His letter of August 5, 1898 shows that he gave the matter most careful attention. In the proof submitted, he criticised the girl's face, the head of the cow, the details of the foliage, the spelling of a word and the ink with which the addresses on the covers were to be printed. Finally a proof was submitted which embraced his suggestions and the plaintiffs were authorized to print the covers in accordance with it. It, therefore, conclusively appears that the defendant intended to be his own judge not only as to what he desired to be placed on the covers, but as to the artistic quality of the work. Accordingly he caused to be stipulated in the contract what design should appear on the finished work by requiring it to be like the proof submitted to and approved by him. This would exclude from the cover what was not on the proof and the design would conform to his idea of artistic merit, the purpose to be attained by the contract. But the construction given the agreement of the parties by the trial court and the Superior Court, has deprived the defendant of the right to make the selection of a design for his cover and to enforce that right by contract. While admitting that the defendant had not been furnished with covers having the design which he approved, yet the court compels him to accept them if a jury determine that the imprint of the plaintiffs' advertisement does not appreciably diminish their artistic effectiveness and usefulness, and the jury is to determine this question from the contradictory testimony of witnesses whose knowledge of the subject

may be as limited as that of the ordinary juryman. The contract of the parties is thus disregarded and avoided, and the judgment of the defendant as to what constitutes an artistic and desirable cover for his catalogue is supplanted by the opinion of the jury. Until it is judicially determined that men have no right to contract in regard to the subject-matter of this agreement, the position of the court below cannot be sustained.

In support of the right of the plaintiffs to furnish the printed covers with the addition of the imprint of their firm name as an advertisement, it is argued that it is the custom of the appellees and other lithographers to submit their proofs without the imprint and to put it on the finished work unless otherwise ordered. This argument has no merit whatever in view of the facts of this case. It ignores the rights of the parties as defined by their contract. It is immaterial what the custom of the trade is. It cannot defeat the essential terms of a contract: Coxe v. Heisley, 19 Pa. 243. Here the agreement provided that a sketch of the covers should be submitted and subsequently a proof, both of which should be approved by the defendant. This was done. The printed covers were to be like the proof which had no imprint upon it. This was a stipulation of the contract between the parties which the law will permit no custom to vary. The absence of a negative provision in the contract that the covers should not contain the imprint, therefore, did not, as argued by the plaintiffs, authorize them to place it there. The contract specified what should go on the printed covers by requiring them to be like the proof. What was not on the proof, therefore, could not be put on the covers. This made the agreement of the parties as definite as if the contract had set out at length a description of the figures and other matter which was to be placed on the covers.

The other questions raised by the assignments of error need not be discussed nor determined. The failure of the plaintiffs to furnish the defendant with printed covers like the proofs approved by him was a violation of their agreement and deprives them of the right to enforce payment of the price contracted to be paid for the covers. The learned trial judge should have affirmed the defendant's third point and instructed

the jury that under all the evidence the verdict should be for the defendant.

The eleventh assignment of error is sustained, the judgments of the trial court and the Superior Court are reversed, and judgment is directed to be entered for the defendant.