Main Belting Company, Appellant, *v.* Corn Exchange National Bank and Trust Company.

Argued November 30, 1936. Before KEPHART, C. J., MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert Dechert,* of *Dechert, Smith & Clark,* for appellant.

*Philip Wallis,* with him *Carl W. Funk* and *Drinker, Biddle & Reath,* for appellee.

OPINION BY MR. JUSTICE LINN, January 11, 1937:

Plaintiff, a depositor, brought assumpsit[1] against its bank of deposit for the amount of its checks alleged to have been wrongfully paid by the bank. Forty-five checks are involved, varying in amount from $75.00 to $250.00; 23 of them, $2,575, were drawn by plaintiff on the defendant and to the defendant's order; 22 of them,

---

[1] Liability might also have been enforced by action in tort for conversion: *A. L. Underwood v. Bank of Liverpool* [1924] 1 K. B. 775.

$2,075,[2] were drawn to the order of defendant on plaintiff's account with another bank—the Integrity Trust Company. Some were signed by plaintiff's president and the others by its treasurer, Smith. All were presented to defendant's teller by Smith who received cash for them; though drawn payable to defendant or order, the checks were not endorsed by defendant or by Smith. He used the cash for his own purposes and absconded before his embezzlement was discovered. Plaintiff contends that the checks drawn on defendant were not paid according to their terms, and that the proceeds of those drawn on the Integrity Trust Company were misapplied by defendant; that in each instance plaintiff's accounts were charged with the payments made to Smith in violation of the contract governing the relation of banker and depositor.

Defendant contends that the checks were drawn by plaintiff and were properly paid in cash to its treasurer. The verdict was for defendant and plaintiff appeals. The principal question is whether the bank was authorized to pay cash to Smith on the checks.

The plaintiff corporation manufactured canvas belting. Its traveling salesmen obtained money for traveling expenses by drawing on plaintiff. When such drafts were received by defendant bank, the defendant, instead of charging plaintiff's account with the amount of the draft, advised plaintiff by telephone that a draft had been received. Plaintiff, to pay these drafts, would then deliver to defendant its check drawn on the defendant and to the order of defendant, or its check drawn to the order of defendant and payable by the Integrity Trust Company where plaintiff also had a checking account. Though none of the checks given in payment of such drafts is questioned in this suit, the fact is stated as part of the history of prior transactions between the parties.

---

[2] Plaintiff alleged the sum to be $2,150 but failed to give credit of $75.00 on one of the checks.

The 45 checks now involved were drawn between March 22, 1929, and January 8, 1930, and, with three exceptions (referred to later) were given when no drafts had been presented to the bank.  A typical check is in the following form:

```
        MAIN BELTING COMPANY                No. 4346
        1241 CARPENTER STREET

                         PHILADELPHIA August 15 1929
Pay to the
    Order of———Corn Exchange National Bank———$75.00
           Indemnity
————— =20043     $75 & 00 Cts. ————DOLLARS

                     MAIN BELTING COMPANY
To The
    CORN EXCHANGE          By L. C. SMITH President
    NATIONAL BANK AND                    Treasurer
       TRUST COMPANY   3-18
Draft      PHILADELPHIA
Hiller
```

The words "Draft Hiller" in the lower left-hand corner and similar words on other checks were placed there by plaintiff, and, it is contended, should have conveyed information to the bank of the purpose of the check, thus advising the bank that Smith was not intended to receive cash for the check.  In view of the conclusion reached on the principal question raised, we need not deal with the arguments presented as to the effect of those identifying words.

The contract between the bank and the plaintiff required the bank to pay plaintiff's checks to the payee designated by the plaintiff and to no one else, save on the order of the payee: *United Security Life Insurance Co. v. Central National Bank,* 185 Pa. 586, 40 A. 97, and cases following it.  The defendant, who was the payee, could therefore apply the proceeds only for the purposes designated by the drawer.

We come then to the authority of the plaintiff's treasurer, Smith, to nullify the written order given to its bank by substituting for plaintiff's order, Smith's oral demand to receive cash. Plaintiff put in evidence an article from the by-laws[3] stating in general terms the duties of the treasurer. When it was read into the record counsel for the plaintiff made the following statement: "In other words we admit L. C. Smith was the treasurer of the plaintiff company, with the usual powers and duties of treasurer, including the general right of the treasurer to receive cash for the company. But I do not mean to admit that he was entitled to receive cash for these particular checks, but only that he had the ordinary and usual powers of treasurer." The admission added nothing that was not contained in the by-law. The resolution of the Board of Directors, also filed with defendant, authorizing the opening of the bank account, was also put in evidence. It is as follows: "At a meeting of the Directors of this Company, held at the office of the Company, on the tenth day of June, 1927, on motion, duly seconded, it was

---

[3] "The treasurer shall give bond for the faithful discharge of his duties in such form and with such sureties as the Board of Directors may from time to time require. He shall have the care and custody of all of the funds of the company; shall sign notes, checks, drafts and orders for the payment of the Company's moneys, and shall pay and dispose of the same. The treasurer shall at all times exhibit his books and accounts to the Directors upon application at his office during ordinary business hours.

"The corporation's moneys shall be deposited by the treasurer in its name, in such bank or banks, or shall be invested by him in its name in such securities as may be approved by the Board of Directors from time to time, said moneys shall be withdrawn from such bank or banks only upon check of the treasurer, or in his absence, upon check of the President, or of such other person or persons and with such countersignature as may be specified by the Board of Directors. The authority to draw upon the funds of the corporation between meetings of the Board of Directors may be revoked by the President (or, in his absence, by the Treasurer) without notice."

"RESOLVED, That Walter H. Tobey, the Treasurer of this Company, be and he hereby is instructed and empowered to open and keep an account of deposit and discount with the Corn Exchange National Bank, of Philadelphia, Pa., in the name and for the use of this Company; to deposit in said bank to the credit of this Company from time to time any and all moneys, checks, drafts, notes, acceptances or other evidences of indebtedness (whether belonging to this Company or otherwise) which may now be or may hereafter come into its possession; and until otherwise ordered said bank be and hereby is authorized to make payments from the funds of the Company on deposit with it upon and according to the check of the Company signed by its president or treasurer and the said president and treasurer, singly, are authorized to sign, endorse, accept, make, execute and deliver any and all checks, notes, drafts and bills of exchange." The controlling words of the resolution, as applicable to this record, are as follows: "and until otherwise ordered said bank be and hereby is authorized to make payments from the funds of the Company on deposit with it upon and according to the check of the Company signed by its president or treasurer and the said president and treasurer, singly, are authorized to sign, endorse, accept, make, execute and deliver any and all checks, notes, drafts and bills of exchange." Shortly stated, the bank must pay "according to the check of the Company signed" etc.

The treasurer, Tobey, named in the resolution, was succeeded by Smith.

Plaintiff contends that while defendant was "authorized to make payments from the funds of the [plaintiff] on deposit with [defendant] *upon and according to the check of the* [plaintiff] . . ." it did not do so; that the checks drawn on the Integrity Trust Company required defendant to collect the proceeds and hold them subject to plaintiff's order and those drawn on defendant required defendant to pay them according to the

resolution; that plaintiff had not ordered payment to Smith; that while Smith as treasurer might have drawn, or procured to be drawn, checks on plaintiff's funds, to his own order which defendant would have been authorized by the resolution to pay, he did not do so, but that that possibility cannot be regarded as authority to deviate from the express terms of the resolution. Plaintiff's position is supported by principles applied in *Graham v. Southington Bank & Trust Co.,* 99 Conn. 494, 121 A. 812; *Sims v. United States Trust Co.,* 103 N. Y. 472, 9 N. E. 605; *Robbins v. Passaic National Bank & Tr. Co.,* 109 N. J. L. 250, 160 A. 418; *Rudisill Soil Pipe Co. v. First Nat. Bk.,* 224 Ala. 436, 140 So. 569; *W. L. Chase & Co. v. Norfolk National Bank,* 151 Va. 1040, 145 S. E. 725; *Milano v. Sheridan Trust & Savings Bank,* 242 Ill. App. 362; *Kuder v. Greene,* 72 Ark. 504, 82. S. W. 836.

In defense the bank read in evidence an averment of new matter, as admitted by plaintiff's reply to new matter: "it was and is usual and customary to draw checks, the payment of which in cash is desired by the drawer, to the order of the bank upon which such checks are drawn." In passing it may be noted that the averment would apply, if at all, only to the 23 checks drawn on plaintiff's account with defendant and not to those drawn on the account in the Integrity Trust Company. The averment was received over plaintiff's objection that a qualification of the admission made in plaintiff's reply should also be put in by defendant. We need not deal with this point (the rule is considered in *Rodgers, Admr., v. Fleming,* 325 Pa. 228) ; because, in any view, the averment will not support the argument made by defendant. In the first place, if considered as an averment of usage or custom, it must yield to the provision of the resolution which is an expressed term of the contract of the parties specifically requiring the bank to do what the alleged custom would dispense with doing: *Krehl v. Mosser,* 264 Pa. 403, 406, 107 A. 834; *Harris v.*

*Sharples,* 202 Pa. 243, 249, 51 A. 965. · The same general rule of construction applies to this contract that is applied to others; the court must find what the parties meant by the words used to express their intention in the light of the surrounding circumstances. There is no averment that plaintiff had notice, prior to Smith's embezzlement, of the alleged usage or custom or that it was operative in conditions in which plaintiff should have known of it. If plaintiff's checks should be considered subject to it, the usage or custom is unreasonable and must be condemned. Compare *Dempsey v. Dobson,* 184 Pa. 588, 39 A. 493; *Cameron v. Carnegie Trust Co.,* 292 Pa. 114, 140 A. 768. The manner in which Smith was able to use these checks without earlier discovery illustrates its unreasonableness. The checks drawn on defendant show that they were not endorsed either by the payee or by Smith. On their return to plaintiff for vouching, without endorsements, the plaintiff would find nothing on them to show who had received or what had become of the proceeds directed by the checks to be paid to defendant. During such examination of the returned checks the Treasurer, Smith's, knowledge of his embezzlement would not be the knowledge of the plaintiff: *Reimel v. Northwestern Trust Co.,* 298 Pa. 503, 148 A. 706. The facts are not within the rule applied in *Myers v. Southwestern Nat. Bank,* 193 Pa. 1, 44 A. 280, where the plaintiff's confidential clerk destroyed the evidence of his forgeries and at the same time made false reports to the plaintiff. Smith destroyed nothing and made no reports, the checks on which he obtained cash were there but an examination of them would not show that Smith had obtained the cash. A practice so readily susceptible of fraudulent use without the probability of detection is unreasonable.

Defendant also contended that the transactions came within sections 5 and 8 of the Uniform Fiduciaries Act: May 31, 1923, P. L. 468, 20 PS sections 3371, 3392; that there was no evidence of bad faith. This Act, defendant

contends, applies to both classes of checks, those drawn on defendant as well as those drawn on the Integrity Trust Company and cashed by defendant. There is no evidence that defendant knew that the treasurer, Smith, was acting dishonestly in these transactions, but the performance of its contract with its customer was not conditioned on knowledge of that fact. Defendant had agreed to disburse plaintiff's funds "upon and according to the check" of the plaintiff; the obligation is clear; the defendant has not performed; it is immaterial that it did not know and had no reason to suspect that Smith was an embezzler; if it had paid "according to the check" Smith could not have received the money from the teller on these checks. That checks are made payable to a bank when it is desired to transfer funds to it from another bank, or to purchase a draft or pay a debt due the bank, is perhaps common enough, but if a bank with the limited authority shown in this record treats such a check as payable to bearer, it takes the risk. As to the checks drawn on plaintiff's account in the Integrity Trust Company to the defendant's order, defendant was in fact a mere agent to collect for plaintiff and hold the proceeds for plaintiff's account. Not having accounted to plaintiff, it is answerable in this suit.

We said above that three of the checks were in a separate class. Of the proceeds of these, $450, Smith used $225 to pay for drafts on the plaintiff which defendant has received; this left defendant indebted to plaintiff on these checks in the sum of $225.

Plaintiff's request for a directed verdict in its favor should have been affirmed. The assignments of error raising the point are sustained. The judgment is reversed and the record is remitted for entry of judgment for plaintiff for $4,650 with interest.