J. F. MOORE, TO USE, v. E. I. CARTER ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF COMMON PLEAS
NO. 1 OF ALLEGHENY COUNTY.

Argued October 30, 1891—Decided January 4, 1892.
[To be reported.]

1. A provision in a building contract that no extras shall be paid for un-
less ordered in writing by the owner or architect, may be waived by the
conduct of the parties.  The testimony, in the present case, held to ex-
hibit sufficient evidence of such waiver for submission to the jury.

2. A stipulation that the contractor shall furnish releases from sub-
contractors, etc., before the last instalment of the contract price shall
be paid, will not preclude the filing of a mechanics' lien by the con-
tractor, in advance of the furnishing or procuring of such releases.

3. Nor is it necessary to procure and furnish the releases before proceed-
ing by scire facias upon a lien so filed, to liquidate the amount due
thereon; as the court can and will protect the defendant by restraining
execution until the liens of the sub-contractors, etc., are paid and sat-
isfied.

4. Substantial compliance with the terms of a contract is sufficient to en-
title a party to recover,—not the full contract price, but such price less
deductions for any minor matters left uncompleted; and it is error to
charge that substantial performance "was sufficient," omitting the
qualification.

5. An instruction that if the jury believe that departures from the original
contract were plain and palpable to the defendant, his silence is pre-
sumptive evidence of a previous mutual consent, is erroneous.  There
is an essential distinction between this and the doctrine of Bryant v.
Stilwell, 24 Pa. 314.

Before. PAXSON, C. J., GREEN, CLARK, WILLIAMS, MC-
COLLUM and MITCHELL, JJ.

No. 204 October Term 1891, Sup. Ct.; court below, No. 526
March Term 1889, C. P. No. 1.

On February —, 1889, John F. Moore, for the use of C. B.
Willey, brought scire facias sur mechanics' lien against Maria
Carter and E. I. Carter, her husband. . Issue.

At the trial, on March 18, 1891, the following facts were
shown:

On February 20, 1888, E. I. Carter and John F. Moore entered

into a written contract for the erection by said Moore, the plaintiff, on a lot of ground owned by Maria Carter, wife of E. I. Carter, of a dwelling, an office, a carriage-house and stable, in accordance with certain plans and specifications made a part of the contract. The contract provided that the price of said improvements should be six thousand dollars, payable in instalments as the work progressed, the covenants and agreements contained in said contract to be "strictly kept and performed" by the contractor; that the work and materials to be furnished by the contractor should be of the best character and style, and the full intent of the plans should be carried out, the work to be carried on and completed under the supervision and to the satisfaction of E. W. Jackson, architect; that no claims for extras should be allowed unless the same were ordered in writing by the owner or architect, and any alterations should be valued at the same rate at which the other work was done, such valuation to be made in case of dispute, by two competent persons (not named), one to be employed by the owner and the other by the contractor, and the two to have power to name an umpire; that the decision of the architect upon any dispute arising with respect to the true meaning of the drawings or specifications, should be final and conclusive, and any material or work that he might condemn should be at once removed from the premises; that the contractor should furnish releases from all sub-contractors and parties furnishing materials, before the last payment should be made to him at the completion of the buildings; and that the contractor should pay the sum of two dollars per day for any delay in completing the stable, carriage-house and office after May 1, 1888, and four dollars per day after August 1, 1888, for any delay in completing the dwelling.

The plaintiff erected the said buildings, and on their completion, the defendants, who had been living on adjoining premises, took possession of them. This lien was filed for a balance of $2,730.92, alleged to be due the plaintiff on account of the contract price of six thousand dollars and extras amounting to $1,330.92. Among the extras specified were the matters mentioned by the plaintiff, Moore, in his testimony as stated below.

John F. Moore, the plaintiff, sworn as a witness on his own behalf, after identifying the contract and specifications, was asked:

" Q. What was done under the contract? "

Objected to as incompetent and irrelevant; that it is immaterial what was done under the contract, under the claim filed in this case, except as to certain claims for work in addition to the contract.

By the court: Objection overruled; exception.[5]

The plaintiff then testified that he went to work under the contract, and prepared the ground for laying the foundations of the dwelling; that it was found to be necessary to put in a stone foundation, instead of the one that was specified, because of the fact that the lot had been filled in, and the building was located on made ground; that the architect and owner directed the building of a stone foundation, and while it was in course of erection the plaintiff framed the stable in accordance with the plans; that, on attempting to put up the stable, it was discovered that the architect had made a mistake in his measurements, and the sills projected over the foundation walls into a street, about nine feet. The defendants' counsel having objected to any testimony regarding work or extras outside the specifications, for the reason that the contract required orders for extras to be in writing, the plaintiff was then asked by his counsel:

" A. Well, there were alterations in the stable made to the amount of about five hundred dollars, and that was the first money that they paid, the whole was for alterations in the stable; he gave me a check for five hundred dollars. Q. Of what did those alterations consist? A. They consisted in framing the stable all over again, getting it to suit the ground; the stable also settled. Q. It was upon a shortage of ground? A. Yes, sir; their lot was not as large by nine feet, I think it was, as the plan called for. Q. The lot was not as large by nine feet? A. No, sir; it was not as large. Q. That was ascertained by measurement? A. That was ascertained by measurement; yes, sir. Q. Whose attention did you call to the fact of that deficit? A. Dr. Carter's was the first. Q. Do you remember when that was, near what time? A. It was just about the second week in April, I think; we were ready to raise the building. Q. Now what was done? "

The witness testified, further, that in pursuance of this direction he made alterations in the stable to the amount of five

hundred dollars, and that quite a number of extras were put on the dwelling, at the request of the defendants. He was then asked:

" Q. Do you remember of a request for a stone pier and posts in the cellar, by the defendants ?

Objected to, that under the contract they must show more than a mere request by the defendants for any such extra.

Counsel for plaintiff propose to follow this by evidence showing that defendants promised to pay for extras.

By the court: Objection overruled; exception.[6]

The witness stated that he called the attention of E. I. Carter to the fact that there should be a pier at a certain place in the cellar to support a partition wall above, and Dr. Carter said, if it was necessary, to put it in there and he would pay for it.

Plaintiff testified further, that while building the front wall of the dwelling he discovered that the wall of an adjoining building was out of plumb, leaning over Mrs. Carter's lot so far as to interfere with the erection of her building; that he notified the defendants, the architect and the owner of the adjoining building, all of whom came upon the ground and inspected the premises, whereupon an arrangement was made to let the wall of the adjoining building remain, and convert it into a party wall; that the architect then gave directions as to how the front wall of the Carter building should be erected, so that the difference in plumb between the two buildings would not be noticeable; that the witness told the architect that the work, done as directed, would not look right, but was ordered to go ahead and do it; that after the front wall was up into the second story, the architect ordered it to be taken down on account of its not looking right, and the plaintiff refused to take it down, whereupon the architect came early in the morning with four laborers, and tore it down in the presence of Dr. Carter ; that subsequently, Dr Carter discharged the architect, and the plaintiff rebuilt the wall according to the doctor's direction, under an agreement that the extra cost should be paid. Further testimony given by this witness, and testimony of other witnesses called by the plaintiff were not printed in the paper-books.

Dr. Carter, one of the defendants, testified that the extras put in by the plaintiff over and above the requirements of the specifications, were inserted on the plaintiff's responsibility, and

### Charge of Court below.

without any order by the witness; and that the front wall, and such other parts of the work as were done a second time, had been condemned by the architect as defective, and were taken out and replaced on that account, without any agreement by the witness that they should be paid for as extras.

The defendants offered in evidence three unsatisfied mechanics' liens, filed against the building in question, by subcontractors and material men. Counsel for plaintiff proposed to file a release of the liens so offered in evidence.

Objected to, that it is too late, and further, that no releases are executed and filed at this time.

By the court: Objection overruled; exception.[3]

Subsequently, the plaintiff, in pursuance of the foregoing offer, presented the records of those liens, showing the entry of satisfaction thereon after the date at which they were put in evidence by the defendants; admitted.

From the charge of the court below, infra, there appears to have been a conflict of testimony with respect to the willingness of the parties to submit the valuation of the extra work to arbitrators, the plaintiff saying that the defendants "would not do anything," and the defendants saying that they offered to join in such submission. The testimony on this subject was not printed.

The defendants claimed that they were entitled to an allowance of four dollars per day for delay in completing the dwelling, but the testimony on this subject was not printed.

The case being closed on the evidence, the court, COLLIER, J., charged the jury in part as follows:

The first question that arises as to extra work is, can he claim for it unless you find that he has complied with that part of the agreement which provides that before any extra work shall be charged for, it shall be agreed upon in writing so that there could be no dispute. That binds them unless they have shown you some good excuse. In law there is an excuse even where you make an agreement of that kind, but you must satisfy the jury clearly that it is made out. If the extra work is done on the request of the defendant and a promise to pay for it knowing it is extra work, that in law is considered a waiver of having it in writing, but nothing short of that will do. If

you make a contract, unless some good reason is shown the law requires you to abide by whatever is put down in black and white. The plaintiff says every bit of this work was ordered by the defendant and his wife, most always both, and always one or the other; that it was specified, and they promised to pay its fair value. On the part of the defendants that is denied just as positively as it is asserted by the witnesses on the other side; they deny that they made any such agreement; alleging that they were standing upon the written agreement, left it all to the contractors. Now, the burden is on the plaintiff to satisfy you of that. If he has not satisfied you of that, then the contractor has no right to these extras. If they did order and promise to pay for them, and they were extras outside of the contract, then what would they be worth? This agreement does not say they shall be paid what these extras would be worth by themselves; they are to be considered in connection with the rest of the work, whatever proportion that would be. There is not much evidence to satisfy you of what that is, and you will have to determine that as best you can; and whatever their value is the plaintiff would be entitled to.

There are some other extras that stand upon a different ground. It is claimed that there was some extra work caused by reason of the plans of the architect being larger than the ground, which necessitated some extras, and that the specifications themselves could not be carried out; that this was brought to the notice of the defendants, and they agreed that was so, and ordered them to go on and do this extra work wherein the plans and specifications were defective. In one case, there is a claim on account of the shortness of the lot, although the learned counsel on the other side says that has nothing at all to do with anything but the stable. You will judge of that from the evidence.

If you have a written agreement, you are bound to stand by it; yet, if the plans and specifications given to you will not carry it out, and you are bound to do something you could not do by the plans and specifications, then if the party agrees to have that paid for, you should go on, but if he will not have that corrected, you may stop. That is the proper way to do. That being the case, plaintiff says the attention of both parties was called to these things. If that was done, he would be en-

titled to that, for the reason that he could not carry out the plans and specifications. . . . .

[Then there is this provision in the contract: "Should any dispute arise respecting the true value of any extra work, or any work omitted, the same shall be valued by two competent persons," etc. That covers the whole case. The duty of the plaintiff and defendants, when they had this dispute, was to propose to submit it to the arbitrators, as this agreement says. Have they given you a good excuse for not doing that? The plaintiff says he has; he says that the defendants would not do anything at all. The defendants say they offered to submit to arbitrators. This agreement, as you see, if carried out, would have prevented the jury from sitting here four or five days on the case, because the parties themselves, in writing, fixed a way by which they should have avoided all this expense; somebody is to blame. If the plaintiff has satisfied you that he had a good excuse for not submitting to arbitration, or that it was the defendant's fault, then he would be entitled to have you pass upon these extras.] [11]

[As to the agreement to pay four dollars a day, if the house is not delivered by a certain day, all we can say about that is, that it is expressly agreed in writing, if he does not deliver it at that time he shall pay so much a day, unless there is some excuse. There is a positive agreement that it should be deducted, and if there is an excuse you will find it from the evidence. The only excuse I have heard was about those matters as to the building; not very clear proof, but that is for you.] [12] . . . .

On the part of the plaintiff, the court is asked to charge:

3. That if the plaintiff acted honestly, and in good faith substantially performed the contract, that was sufficient.

Answer: Affirmed.[8]

7. That, if the jury believe that changes in the original contract were plain and palpable to defendant, the silence of defendant is some presumptive evidence of a previous mutual consent.

Answer: Affirmed.[9]

The court is asked by defendants to charge the jury:

1. That under all the evidence the plaintiff cannot recover.

Answer: Refused.[1]

2. That, whereas the contract in evidence requires releases

from all sub-contractors and parties furnishing materials, to be produced at the time of the completion of the building, and before the payment under the contract was to be made, and the plaintiff Moore has testified that such releases are not furnished or obtained, and testified to receipts upon the contract, showing a less amount due thereon than the last payment due under the contract; and the evidence also shows mechanics' liens entered against the building by material-men, at No. 40 March Term 1889, No. 41 March Term 1889, and No. 10 June Term 1889, aggregating $1,557.74, and remaining unsatisfied, the jury cannot find in this action that any part of the contract price is due from the defendant.

Answer: Refused.[2]

6. That, whereas the contract put in evidence by the plaintiff says that no claim for extra work or materials will be allowed, which shall not have been ordered in writing by the owner or his architect, and the plaintiff has shown that not a single item of extras was so ordered, the plaintiff cannot recover for any extras as claimed by him.

Answer: Refused.[7]

10. The front wall, when partly constructed, being in part torn down by the architect, and the balance being torn down by the contractor under the architect's orders, as bad work, as testified to by plaintiff Moore, and the wall being rebuilt by extra and expert bricklayers, as testified to by Moore's bondsman, Mr. Willey, the plaintiff, has no cause for charge against the defendants therefor, and there is no evidence by which Mrs. Carter can be charged therewith.

Answer: Refused.[10]

—The jury returned a verdict for the plaintiff for $1,850. A rule for a new trial having been discharged and judgment entered, the defendants took this appeal assigning for error:

1, 2. The refusal of defendants' points.[1] [2]

3, 5, 6. The admission of plaintiff's offers.[3] [5] [6]

7, 10. The refusal of defendants' points.[7] [10]

8, 9. The affirmance of plaintiff's points.[8] [9]

11, 12. The parts of the charge embraced in [ ] [11] [12]

*Mr. Marcus A. Woodward* (with him *Mr. Frank R. Stoner*), for the appellants:

Arguments.

1. That no right of action existed for any part of the contract price, until production of the releases stipulated for, is too plain for argument. The suit was therefore premature. While we were prevented by a strike of printers from printing more than a small part of the testimony, enough appears in the answers to the points to show that the plaintiff's testimony relating to many of the items of extras, that Dr. Carter said he would pay for them, was accepted by the court as proof of a waiver of the stipulations of the contract on that subject, although no reference was made in any instance to the contract, and although Mrs. Carter was the party affected.

2. To say to the jury, as the court did by affirming plaintiff's seventh point, that they might treat as presumptive evidence of an agreement to disregard the contract, the silence of the defendants as to any plain and palpable changes, that is, departures from it, in the doing of the work by the plaintiff, is practically to commit a written contract wholly to the winds and waves. The word "substantially," in plaintiff's third point, is so indefinite that the jury might infer from the affirmance of the point, that any kind of construction which did not fall to pieces and would answer the purposes of use, filled the measure of performance which would justify a verdict for the plaintiff, for the contract price.

3. In the face of the provisions of the written contract, it was error to refuse defendants' tenth point, which referred to work torn down as bad and insufficient, under the direction of the architect. Moreover, no substantial reason was offered by the plaintiff for not having the valuation of extras submitted to arbitration; and the jury were permitted by the court to find any imaginable excuse on the part of the plaintiff, or any degree of supposed fault on the part of the defendants, as entirely overturning the defence. Further, there was no evidence showing any excuse for plaintiff's delay, and the court should not have submitted the question whether the defendants were entitled to the four dollars per day given by the contract for delay in completing the dwelling.

*Mr. T. S. Parker* (with him *Mr. W. C. Erskine*), for the appellee :

The charge of the court below submitted the disputed ques-

tion of fact to the jury in an evidently fair manner.   The plaint-
iff was entitled to file his lien, under the law, to secure his claim;
and if any lien of sub-contractors or material-men were unpaid,
execution on the plaintiff's claim could be stayed by the court:
Shapland v. Nash, 2 Am. L. Reg. 570.   The records showing
the satisfaction of the other liens filed, were properly received
and submitted to the jury.   And the testimony, the admission
of which is complained of, was all clearly competent.   The
eighth specification of error is answered by Sticker v. Over-
peck, 127 Pa. 446, and Gallagher v. Sharpless, 134 Pa. 134.
The answer to the ninth is found in Bryant v. Stilwell, 24 Pa.
314.   And the stipulation respecting the valuation of extra
work by unnamed persons, could not oust the jurisdiction of
the court: Mentz v. Insurance Co., 79 Pa. 478; Quigley v:
DeHaas, 82 Pa. 269.   See also Gallagher v. Sharpless, supra.

OPINION, MR. CHIEF JUSTICE PAXSON:

The second and third specifications of error may be consid-
ered together, as they involve the same principle.   The contract
in evidence required releases from all contractors furnishing
materials, to be produced at the time of the completion of the
building, and before the payment under the contract was to be
made.   At the time the claim was filed and the scire facias is-
sued, there were upon the records certain liens filed by material-
men, and it was claimed by the defendants that no right of
action accrued until these liens had been satisfied.   Upon the
trial below, the plaintiff offered a release of these liens in evi-
dence, and they were admitted under exception by the defend-
ants.   We think the releases were properly admitted.   Although
payment under the contract could not be compelled, there was
nothing in its terms to deprive the plaintiff of the security of
his lien under the act of assembly.   He had a right to file his
claim, therefore, and we see no reason why he might not pro-
ceed by scire facias to liquidate the amount due thereon.   It is
true, the court below would restrain an execution under such
circumstances, until the liens were paid and satisfied.   This is
the proper practice.

The fourth, fifth, and sixth specifications refer to the admis-
sion of certain evidence in regard to extra work.   The plaint-
iff contended that the provision of the contract in relation to

extras was waived by the defendants, and offered evidence which strongly supported this theory. It is true, it was contradicted by the defendants, but this was for the jury, and we see no error in the admission of the evidence referred to. These specifications are not sustained. For the same reason, it was not error to refuse the defendants' sixth point. Under the evidence the question of a waiver of the contract could not be withdrawn from the jury.

The eighth specification alleges that the court erred in affirming the plaintiff's third point. It is as follows: "That if the plaintiff acted honestly, and in good faith substantially performed the contract, that was sufficient." This point was affirmed without qualification. Nor does any sufficient qualification appear elsewhere in the charge. It is true, we have numerous cases which decide that a substantial compliance is sufficient to entitle a party to recover. But to recover what? Not the full contract price, but such price, less deductions for any minor matters left uncompleted. The point was perhaps affirmed upon the authority of Sticker v. Overpeck, 127 Pa. 446, where it was held "that if the plaintiff acted honestly, and in good faith substantially performed the contract, that was sufficient; and if in minor points the contract was not complied with, the jury might deduct from plaintiff's damages the difference between the value of the work as it was turned over to the defendants, and what it would cost to have it completed in strict conformity to the contract." It will be noticed that the plaintiff embodied the first two lines of this ruling in his point, and omitted the rest or the qualifying portion. Had he included the whole, his point might have been affirmed. The effect of the affirmance was to instruct the jury that they might find a verdict for the full contract price, if they believed plaintiff had substantially performed his contract. It is true, the court instructed the jury in the general charge that they might make a deduction for defective work, etc. But there was no instruction that for minor matters wholly omitted, they might and should make a deduction.

Complaint is made in the ninth specification that the court erred in instructing the jury in answer to the plaintiff's seventh point, "That if the jury believe that changes in the original contract were plain and palpable to the defendants, the silence

of defendants is some presumptive evidence of a previous mutual consent." The plaintiff attempted to sustain this ruling by quoting an extract from the opinion of this court in Bryant v. Stilwell, 24 Pa. 314. The sentence quoted is as follows: " The owner's silence affords some presumptive evidence of a previous mutual consent to vary the terms of the original agreement, where such variance, made in his presence, is so plain and palpable that he must have seen and understood its effect." The plaintiff gives this as a quotation. It is not accurately quoted, but the substance is correct. It will be seen that it differs from the language used in the point. In Bryant v. Stilwell, the court says: " But if a plain and palpable variance from the plan agreed upon be made in presence of the owner, in such manner that he must have seen it, and understood its effect," etc. The variance between the point and our ruling is not only plain, but it is essential. The point merely says, if the alterations were plain and palpable, etc. They might have been so, and yet not have been seen by the owner. Nor is there a word about their having been made in the presence of the owner. An alteration that is plain and palpable may not have been seen or noticed. That the distinction is material is obvious from the following extract from the opinion of Mr. Justice BLACK, in the case referred to:

" There are cases in which the consent of the owner will be implied from the fact that he was present when the alterations were made, and did not object. But that inference ought to be cautiously drawn. The most serious defects may not be observable, even by the sharpest eye, until the work is finished. A variance from the plan, apparently unimportant at first, may have an effect upon the building as a whole job, which none but an experienced carpenter would be able to anticipate. A person who gets a house put up under an entire contract is not bound to understand the business. He confides in the skill, as well as the honesty of the man he employs. . . . . . For these reasons, the general rule is that if the contractor slights or bungles his work, he cannot justify himself merely by showing that the owner was present when he was wronged, and made no objection. "

This specification is sustained.

We do not think it was error to refuse the defendants' tenth

point.   See tenth specification.   The question whether the plaintiff was entitled to be paid for rebuilding the front wall, was for the jury under the evidence.   Nor do we find error in those portions of the charge embraced in the eleventh and twelfth specifications.   There appears to have been a conflict of evidence in respect to the willingness of the parties to submit the value of the extra work to arbitrators.   This was left to the jury.   As only a small part of the testimony is printed, we cannot pass upon this matter.

> Judgment reversed, and a venire facias de novo awarded.