# Patterson *v.* Brace.

*Contract—Indefiniteness in specifications—Province of court and jury.*

Where a person contracting for the purchase of a boiler simply specified
that the bottom shell of the boiler should consist of a single plate which
should extend up above the fire line, but did not specify the precise point
upon the circumference of the boiler at which the fire line should be lo-
cated, nor the width of the bottom plate, and the seller of the boiler in an
action for its price shows by expert testimony that a fire line a little below
the center of the boiler was a proper line, it is for the jury to determine
whether the location of the fire line as proposed by the plaintiff was
proper, and whether when properly located the bottom plate extended
above it.

Argued Oct. 23, 1900.    Appeal, No. 54, Oct. T., 1900, by de-
fendants, from judgment of C. P. No. 1, Allegheny Co., Sept. T.,
1897, No. 815, on verdict for plaintiff in case of William F.
Patterson v. C. H. Brace and N. C. Brace, trading as Brace
Brothers.    Before McCollum, C. J., Mitchell, Fell, Brown,
Mestrezat and Potter, JJ.    Affirmed.

Assumpsit to recover the price of boilers.    Before Stowe, P. J.

At the trial it appeared that the plaintiff contracted to furnish and erect for defendants two 125 horse power boilers according to certain specifications, among which was the following:

" There shall be two Horizontal Tubular Boilers of 125 horse power each, the shells to consist of four plates, one on the bottom from head to head and extending up above the fire line, and three plates on the top. All of the best quality of flange steel so designed and braced that they shall be capable of carrying constant working pressure of 120 lbs. These Boilers shall be erected and bricked in upon suitable foundations, ready for pipe connections."

After the boilers had been manufactured and delivered, defendants claimed that the specifications had not been actually followed. Their defense was summarized in their affidavit of defense as follows:

The boilers, for the price of which this suit was brought, are not in accordance with said specifications in that the bottom plates of the shells do not extend up above the fire line, but are at least twelve inches below it, so that it would be impossible to properly erect said boilers and brick them in upon suitable foundations without exposing the longitudinal seams and rivets therein to the fire. By reason thereof the said seams would be liable to open and leak, and also to disable said boilers from carrying a constant working pressure of 120 pounds, and there would be consequent danger of explosion.

The evidence as to what was the custom of the trade as to the location of a fire line is stated in the opinion of the Supreme Court.

Defendants presented the following point:

1. Under all the evidence the verdict should be for the defendants. *Answer:* Refused. [1]

2. It being provided in the contract sued upon that "there shall be two horizontal tubular boilers of 125 horse power each, the shells to consist of four plates, one on the bottom from head to head and extending up above the fire line," if the jury believe from the evidence that the bottom plates of the shell of the boilers furnished did not extend up above the fire line, and that the defendants for that reason declined to accept or pay for said boilers as not being in accordance with the specifica-

tions, the verdict should be for the defendants. *Answer :* This point is refused. It takes from the consideration of the jury the principles I have been suggesting, the fact of a substantial compliance in effect and value and operation of a machine that does not in literal terms comply with the agreement. The burden of proof in a case of that kind is upon the plaintiff to satisfy the jury that that difference, where it exists, is of no substantial effect. It is for the jury to say whether or not there was a substantial compliance with the agreement; it is not a mere question of literal compliance. [2]

3. The burden is upon the plaintiff to show that the boilers furnished by him to the defendants were in accordance with his contract. *Answer :* Affirmed, with the qualification that a literal compliance is not required. If the plaintiff has satisfied you that in all such respects as there is noncompliance with the contract, such failure to comply in no substantial or material respect affected the durability or fitness of the boilers for the purpose intended and contemplated by both parties, such literal noncompliance will not itself operate as a good defense to plaintiff's suit. But the burden of the evidence is upon him, and he must satisfy you that such noncompliance was with the consent of defendant, or was immaterial in its effect upon the value and operation of the boilers.

Verdict and judgment for plaintiff for $1,889.25. Defendants appealed.

*Errors assigned* were (1–3) above instructions, quoting them.

*W. K. Jennings,* for appellants.—The doctrine of substantial performance is intended for the protection and relief of those who have faithfully and honestly endeavored to perform their contracts in all material and substantial particulars, so that their right in compensation may not be forfeited by reason of mere technical inadvertence, or unimportant omissions or defects : Gillespie Tool Co. v. Wilson, 123 Pa. 19; Harris v. Ligget, 1 Watts & Sergeant, 301; Martin v. Schoenberger, 8 W. & S. 367; Hartman v. Meighan, 171 Pa. 46; Smith v. Brady, 17 N. Y. 173; Brownfield v. Johnson, 128 Pa. 254.

*Charles F. Patterson*, with him *John F. Sanderson*, for appellee.

OPINION BY MR. JUSTICE POTTER, January 7, 1901:

The plaintiff is an engineer and contractor for the erection of steam plants, and as such, contracted to furnish and erect for the defendants " two horizontal tubular boilers of 125 horse power each, the shells to consist of four plates, one on the bottom from head to head, and extending up above the fire line and three plates on top."

The boilers were manufictured and delivered to the boiler house of the defendants, and the plaintiff was proceeding to erect them in place, when he was stopped by the defendants, upon the ground that the specifications had not been accurately followed.

The boilers were finally removed by the plaintiff, under an agreement that it should be without prejudice, and that the defendants should have credit for the proceeds of their sale in case of verdict against them. The plaintiff then brought this action in assumpsit for the price.

At the trial, the chief point set up by the defense was that the bottom plate did not extend up above the fire line. The specifications did not, however, fix definitely the location of the fire line upon the boiler, and the question was as to just where the fire line ought to be. If its proper location was as claimed by the plaintiff, then there was literal compliance with the terms of the contract; while if the contention of the defendants in this respect was correct, there was room to doubt.

The court submitted the evidence to the jury, and the result was a verdict for the plaintiff. In this appeal the first assignment of error complains of the refusal to give binding instructions in favor of the defendants. The court was clearly right. There was ample testimony upon the part of the plaintiff, if believed by the jury to justify a verdict in his behalf. This assignment is therefore overruled.

The second assignment is to the refusal of the defendants' second point. This was in effect that if the jury found from the evidence that the bottom plate did not extend up above the fire line, and for that reason the defendants had refused to accept, then the verdict should be for the defendants. The

court refused this point precisely as put, upon the ground that it would prevent the jury from considering whether or not there had been substantial compliance with the contract, even if it had not been literally performed. At the same time the jury were cautioned that the burden was upon the plaintiff to show that the difference, if any, was of no substantial effect. We think the court might properly have affirmed this point as it was put hypothetically. But taking what was said in the general charge, in connection with the answer to the points, the jury were fairly left to decide from the evidence whether the defendants received substantially the article for which they had contracted.

The defendants claimed that this was a case in which they had a right to insist upon exact and literal compliance with the agreement; but the difficulty in supporting this contention, lies in the fact that in contracting for the boilers, they simply specified that the bottom shell should consist of a single plate, which should extend up above the fire line; but did not specify the precise point upon the circumference of the boiler at which the fire line should be located. Neither did they specify the width of the bottom plate. If either of these particulars had been accurately prescribed, there would have been no room for dispute, and the defendants would have been in position to demand literal compliance with a plain requirement of the contract. The diameter of the boiler was specified; so was the thickness of the shell, and its quality and tensile strength. But nothing was said as to the width of the plate, except that it should extend up above the fire line at each side. Now where was the fire line? Its position or location not having been specified in this instance by the defendants, the jury must of necessity determine under the evidence whether its location as proposed by the plaintiff was proper, and whether when properly located, the bottom plate extended above it. This duty was imposed upon the jury by reason of the lack of particularity in the defendants' specification. According to the testimony the fire line is simply the point where the supporting and protecting brickwork closes in around the boiler, and it is the point where the fire is stopped in going up the sides of the boiler. The plaintiff proposed to put the fire line in this case at, or a little below, the center; and to build the brick wall in

such manner as to cover the seam or lap of the plates and protect it from the fire. If the evidence of the plaintiff's expert is believed, this was thoroughly good practice, as the lower the fire line was placed, the greater the degree of safety; and although this tended to reduce the area of heating surface beneath the boiler, yet no contention is made in this case that the capacity falls below the amount called for,—125 horse power. All the evidence goes to show that under the practice of boilermakers the fire line is not fixed in any specific location, but varies from the center line up to three fifths of the circumference of the boiler. We think therefore that no injustice was done to the defendants by the answer to the second point.

The third assignment of error complains of the qualification by the court of the defendants' third point, in instructing the jury that a literal compliance with the contract was not required. This qualification was probably made, by the court having in mind a variation in the size of the manhole, and some minor defects which were raised at the trial, but do not seem to have been pressed any further. At all events, under the view we take of the case, the charge as a whole gave to the defendants the full benefit of everything to which they were entitled.

The defendants refused to accept the boilers, and they were removed by the plaintiff, but under an agreement by which the defendants were to be credited with the proceeds of their sale so there can be no reasonable complaint upon this score.

The judgment is affirmed.