RICHARDSON et al. v. HERBERT.†

(Court of Civil Appeals of Texas. Feb. 15, 1911. Rehearing Denied March 22, 1911.)

1. SALES (§ 359*)—ACTION FOR PRICE—EVIDENCE—SUFFICIENCY.

Evidence in an action for goods sold *held* sufficient to sustain a verdict for plaintiff.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1056–1059; Dec. Dig. § 359.*]

2. SALES (§ 166*) — SUBSTANTIAL PERFORMANCE.

Where goods are sold by description in a written contract, it is not necessary that the goods delivered shall strictly conform to the description, if there is a substantial compliance with the description.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 391–400; Dec. Dig. § 166.*]

3. SALES (§ 182*)—ACTION FOR PRICE—TRIAL —QUESTION FOR JURY—PERFORMANCE.

Whether there has been a substantial performance of the terms of a written contract for the sale of goods is generally a question of fact for the jury.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 492–495; Dec. Dig. § 182.*]

4. APPEAL AND ERROR (§ 1068*)—HARMLESS ERROR—INSTRUCTION—ERROR CURED BY VERDICT.

An instruction, in an action for the price of railroad ties, which permits a recovery on the basis of a fair market value, where there is no pleading or evidence of market value, is harmless, where the jury finds a sale at a contract price.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228; Dec. Dig. § 1068.*]

5. RAILROADS (§ 179*)—ACTION—FINDINGS.

Where railroad ties are sold to the president and owner of a railroad and used in the construction of the road, and the proof, in an action against the president, individually, and the railroad company, shows that the company owes for the ties, the finding of a debt is necessarily a finding that a lien exists against the company, which it is the duty of the court to declare and enforce.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 601–604; Dec. Dig. § 179.*]

6. SALES (§ 52*)—ACTION FOR PRICE—EVIDENCE—PRICE PAID BY SELLER.

The defendant, in an action for the price of railroad ties, attempted to show that the plaintiff had agreed to take a certain price for a part of the ties, which plaintiff denied, and defendant was then permitted to prove what the seller paid for the ties. *Held*, that such proof was admissible.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 127; Dec. Dig. § 52.*]

7. APPEAL AND ERROR (§ 970*)—REVIEW—RECEPTION OF EVIDENCE—DISCRETION OF LOWER COURT.

Where a rule has been invoked as to all the witnesses at the beginning of the trial, and has been enforced, the court in the enforcement of such rule does not err in excluding testimony, even though it would have been competent, since the reception of evidence is a matter of discretion for the trial court, and will not

be reviewed on appeal, unless there appears a clear case of abuse of such discretion, to the injury of the complaining party.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3849–3851; Dec. Dig. § 970.*]

8. SALES (§ 176*)—PERFORMANCE—ESTOPPEL.

Where the buyer of railroad ties, knowing that the seller is buying and paying for ties for delivery, receives and inspects those delivered and makes a written report to the seller, showing their acceptance, and thereby induces the seller to believe that like ties will be accepted, under a written contract, and they are shipped by the seller under that belief, the buyer is estopped from denying that the ties conform to the contract.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 436; Dec. Dig. § 176.*]

9. SALES (§ 181*)—ACTION FOR PRICE—EVIDENCE—PERFORMANCE—SUFFICIENCY.

Evidence, in an action for the price of railroad ties sold under a written contract, *held* sufficient to show a substantial performance of the contract by the seller.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 486–491; Dec. Dig. § 181.*]

10. RAILROADS (§ 179*)—ACTION—PLEADING — VARIANCE BETWEEN ALLEGATION AND PROOF.

Where the seller of railroad ties alleged, in an action for the price, that they were sold to the individual defendant, who was described as the president of the defendant company, and that they were accepted and used by both defendants, and the evidence showed that the individual defendant was president and owner of the defendant company, and that he ordered the ties and received and accepted them, and placed them on the defendant company's roadbed, there is no variance between the allegation and proof.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 601–604; Dec. Dig. § 179.*]

Appeal from District Court, La Salle County; J. F. Mullally, Judge.

Action by John F. Herbert against Asher Richardson and another. Judgment for plaintiff, and defendants appeal. Affirmed.

W. A. H. Miller and Hicks & Hicks, for appellants. C. C. Thomas and Guinn & McNeill, for appellee.

FLY, J. This is a suit by appellee to recover of Asher Richardson and the Asherton & Gulf Railway Company the purchase price of a number of cypress ties, which were contracted for and delivered by appellee to appellants and used by them in the construction of a railroad, and for the foreclosure of a lien on the railroad. The cause was tried by jury, and resulted in a verdict and judgment for appellee for $5,883.75, and the foreclosure of a lien on the property of the railway company.

The facts justified the verdict of the jury. Our conclusions in regard to the material facts are fully elucidated during the further course of this opinion. The court charged the jury: "An exact compliance with the terms of the contract, either as to dimensions or the quality of the ties, is not required by the law as a condition of recovery of

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

† Writ of error denied by Supreme Court April 26, 1911.

the contract price; if the dimensions and quality of the ties delivered be so near the specifications contained in the contract as to amount to a substantial compliance therewith, then the law is satisfied; but if the ties delivered, or any of them, fall so far short of the contract requirements, either in dimensions or quality, as not to amount to a substantial compliance therewith, then the contract price cannot be recovered for such of the ties as are found to be so deficient." That charge is assailed through the first assignment of error; the only proposition being: "When goods are sold by description in a written contract it is a condition precedent to the seller's right of action and recovery on the contract that the goods delivered shall conform to the description."

Under the old rule of the common law a strict and literal performance of the terms of a contract was required as a condition precedent to recovery, but a more liberal rule now prevails, and a recovery may be had if there has been a substantial compliance with the contract. If a contract is performed in good faith in all substantial particulars, the party so performing should recover the contract price, less any damages that may have accrued by reason of the deviation from the strict and literal terms of the contract.

In the case of Linch v. Paris Lumber & Grain Elevator Co., 80 Tex. 23, 15 S. W. 208, which is cited by appellants in support of their proposition, the court said: "The objection to the part of the charge that instructs the jury that the evidence must show a substantial compliance of plaintiff with the terms of the contract rests upon the proposition that a literal performance was required in each and every particular. Such precision cannot, we think, be demanded in the performance of contracts or any other affair of life." The court quotes with approval as follows from the New York case of Smith v. Gugerty, 4 Barb. (N. Y.) 620: "If there is an honest effort to perform the contract according to the letter, and it is substantially fulfilled, the builder should be entitled to receive the reward of his labor, although he may not (as the architect employed in this case has certified) have in every instance complied with its terms literally in every punctilio. A substantial compliance without any intentional variation should in all cases be considered as a full performance of a condition, whether precedent or subsequent." The opinion in the Texas case was in regard to a charge similar in terms to the one in the case at bar, and is supported by the consensus of opinion in the United States. Fitzgerald v. La Porte, 64 Ark. 34, 40 S. W. 261; Hill v. McKay, 94 Cal. 5, 29 Pac. 406; Ætna Works v. Kossuth County, 79 Iowa, 40, 44 N. W. 215; Hattin v. Chase, 88 Me. 237, 33 Atl. 989; Phelps v. Beebe, 71 Mich. 554, 39 N. W. 761; Leeds v. Little, 42 Minn. 414, 44 N. W. 309; Crouch v. Gutmann, 134 N. Y. 45, 31 N. E. 271, 30 Am. St. Rep. 608; Moore v. Carter, 146 Pa. 492, 23 Atl. 243; Meincke v. Falk, 61 Wis. 623, 21 N. W. 785, 50 Am. Rep. 157. Whether there has been a substantial performance of the terms of the contract is usually one of fact to be determined by a jury under instructions of the court. Linch v. Lumber Co. and Crouch v. Gutmann, herein cited.

The second assignment of error complains of the following instruction given by the court: "You are also instructed that, if defendant Richardson accepted 87,000 of the ties delivered to him by plaintiff, after having received them and after having inspected them by himself, or his agents, and executed his deed or deeds of conveyance of the land agreed upon in payment for said ties, then as to said 87,000 the defendant cannot now complain, and the evidence should further be considered only as it relates to the remaining ties not settled for." Under the terms of the contract appellee was to deliver to appellants 87,000 cypress ties, for which they were to convey to him 3,200 acres of land, and they were also to receive $2,164 in addition to the ties from appellee. Appellee's testimony tended to show that when the number of ties named in the contract had been shipped and received and used by appellants, a full settlement as to those ties was had, and the land was conveyed to appellee, and the $2,164 cash had been paid to them before all the ties were delivered. Appellee swore that all the ties were used, and no complaint was made about them when the settlement was made. After that settlement was made about 12,000 more ties were shipped. Appellee also testified that it was agreed that if any of the ties were not good that appellants would have them piled and held for appellee. That was not done by appellants. The effect of the charge was to eliminate any controversy as to the 87,000 ties, if there had been a settlement between the parties as to them.

Appellants recognized the propriety of the charge given by the court by asking the following instruction, which was given: "If you believe from the evidence that when the defendant deeded the land to the plaintiff, on May 15, 1909, that there was no final settlement between the parties as to the classification and inspection and payment of the ties, and if you further find that it was at that time agreed that the ties should thereafter be inspected and classified and the accounts adjusted, then you are instructed that such payment by said deed would not estop the defendant Richardson from claiming defects in the ties thereafter inspected, if you find that any defects did exist in any ties thereafter inspected." There was some obscurity about the testimony of appellee, but he did swear positively that he told Richardson that all the ties used must be paid for, and that there was a payment and settle-

ment for 87,000 ties. There was not a final settlement as to all the ties, on May 15, 1909, when the last deed was executed, because 12,000 more ties had been shipped, for which appellants had not paid appellee. Burns' who represented a construction company in building the road, testified that all of the ties were used in the construction of the road, and appellee had informed appellants that all of the 87,000 ties used were to be paid for as provided by the contract. Appellant Richardson admitted that he used the ties, about 98,000, that were furnished him. McComb, the treasurer of the railroad company, swore that 96,366 ties had been counted and received before the last deed was given in May. There was abundant testimony to show that the ties filled the specifications in the contract.

The seventh paragraph of the charge is criticised in the fifth assignment of error, because it assumed that there were 11,200 ties in excess of the 87,000 provided for in the contract, and permitted a recovery on the basis of the fair market value of such excess, when there was no pleading or evidence of market value. Admitting that the charge was erroneous in so far as market value was concerned, it did not injure appellants, because the court instructed the jury to find for the contract prices of 55 and 25 cents a tie, if there was a contract in regard to them, and the jury so found in their verdict. The jury could not have returned the verdict upon which the judgment is based, without first finding that the ties were contracted for at certain prices.

The lien on the railroad was proved without controversy, and when the jury found that a debt existed they necessarily found that the lien existed, and it was the duty of the court to foreclose the lien. It was a lien for material which it was shown had been fixed as required by law, and, when it was ascertained that the material had not been paid for, it was the duty of the court to declare the lien. Richardson admitted that he was the president and owner of the railroad, and that he made the contract for the ties. Pearce v. Bell, 21 Tex. 688; Jones v. Ford, 60 Tex. 127; Railway v. James, 73 Tex. 12, 10 S. W. 744, 15 Am. St. Rep. 743; Railway v. Henderson, 86 Tex. 307, 24 S. W. 381. The railroad company denied that it made any contract for material, but the uncontroverted proof showed that it did. It admitted the lien existed, but that it did not attach to the railroad. The proof showing that it owed the debt for material, the law fixed the lien, and a finding for the debt included a finding for the lien.

The evidence of Burns, the contractor who built the road, to the effect that the ties were good cypress ties, better than those used on other roads, was both relevant and material. He also testified that the ties averaged 90 per cent. heart, and that they were above the average. The only objection urged to the testimony was that it was irrelevant and immaterial. Other witnesses were permitted to swear, without objection, that the ties were standard and 85 per cent. heart, and that the ties were within the specifications in the contract. Practically all of the testimony given by Burns and objected to by appellants was given by other witnesses without objection.

Appellants endeavored to show that appellee agreed to take 25 cents each for about half of the 98,000 ties, and appellee denied that he had so agreed, and, as a circumstance to sustain his contention, was permitted to prove that he paid 50 cents for each of the ties. The evidence was objected to only on the ground that it was irrelevant and immaterial, and, while we are unable to see that the jury was influenced by the evidence in the rendition of their verdict, still it was proper for the purpose stated and on the question of estoppel.

There was evidence of a report in writing given by appellants of the inspection and acceptance of the ties, and the court would not permit the witness Simpson, who made the inspection and who had sat in the courtroom and heard at least a part of the testimony, to testify as to what his instructions were in connection with inspection. The rule had been invoked as to all the witnesses when the trial began, and had been enforced, and even though the testimony had been competent and proper, the court did not err in excluding it. It was a matter of discretion with the trial judge as to the admission or rejection of the evidence, unless there appeared a clear case of abuse of his discretion to the injury of the complaining party. Phillips v. Edelstein, 2 Willson, Civ. Cas. Ct. App. § 452. Other witnesses for appellants had testified as to what Simpson was employed to do.

If appellants received and inspected the ties and made a report to appellee in writing, showing their acceptance of the same, and thereby induced appellee to believe that like ties would be accepted under the contract and they were shipped to appellants under that belief, they could not afterwards be heard to complain about the ties, and the court did not err in so instructing the jury. Appellants knew that appellee was paying 50 cents each for the ties, and if they induced him to buy the ties, leading him to believe that they would be accepted, they would be estopped from denying that the ties conformed to the specifications of the contract. The pleadings were sufficient to raise the issue, and they were supported by the evidence. The facts indicate that appellants received and used the ties and acted in such way as to cause appellee to believe that they were satisfactory, and actually settled for 87,000 of them, and they cannot be heard now to complain. The evidence showed that there was a substantial compliance with the terms of the contract in the delivery of the ties.

The assignments attacking the charge are

mostly based on the question of a substantial compliance with the terms of the contract and as hereinbefore indicated cannot oe sustained. If a literal compliance with a contract to deliver lumber or ties was required, every such contract would be destroyed. A literal compliance such as appellants demand would vitiate the contract if a tie should fall short the hundredth part of an inch in dimensions, or if there was an infinitesimal portion more of sap than was specified in the contract. There is abundant testimony to show a substantial compliance with the contract, and the jury so decided. The question of performance was one of fact for the jury. Page on Contracts, §§ 1386–1388; Phillip v. Gallant, 62 N. Y. 258; Woodward v. Fuller, 80 N. Y. 312; Drew v. Goodhue, 74 Vt. 436, 52 Atl. 971; Charley v. Potthoff, 118 Wis. 258, 95 N. W. 124.

No exception was urged by the railroad company against the pleadings, on the grounds set out in the propositions under the twenty-sixth assignment of error. Richardson seems to be the railroad company, for he swore: "I am the board of directors of said railway myself; I am the whole shooting match." The pleadings and evidence showed that Richardson was the president and owner of the railroad; that he ordered the material from appellee, received and accepted it, and placed it on the roadbed. There was no denial under oath of the execution of the contract. It was alleged that the ties were sold to Richardson, who is described as president of the company; that they were accepted by both defendants and were used by the railroad company.

None of the assignments is well taken; the evidence sustains the verdict, which was rendered under full and fair instructions, and the judgment will be affirmed.